Kennebec & Portland R. R. Co. *v.* Portland & Kennebec R. R. Co.

———◆———

KENNEBEC & PORTLAND R. R. Co. *& als., in Eq., versus* PORTLAND & KENNEBEC R. R. Co. *& als.*

A railroad corporation and a portion of its stockholders cannot join as co-complainants in a bill to redeem the road from a mortgage, there being no allegation that the corporation has been guilty of any violation of its trust.

To constitute multifariousness as respects the subject matter of a bill, the different grounds of suit must be wholly distinct, and each must be sufficient as stated to sustain a bill.

If they be not entirely distinct and unconnected; if they arise out of one and the same transaction, or series of transactions, forming one course of dealing, all tending to one end; and if one connected story can be told of the whole, it is not multifarious.

All who have been so connected with the mortgages of a railroad sought to be redeemed, as to render them liable for income under it, should be made parties defendant.

Hence, where a bill was brought against a railroad corporation in possession, and a portion of its members, to redeem a railroad from a mortgage, alleges that all the individuals named as defendants fraudulently combined together in all the transactions set forth in the bill, of which the plaintiffs complain, and that they are all partakers of the income of the road which should equitably go in payment of the mortgage debt, and the defendant corporation took possession under the mortgage :— *Held*, there was no misjoinder of defendants.

Such a bill must allege that the defendant corporation holds, or has some title in the mortgage, or must aver information or belief to that effect.

It must also allege a formal offer to pay such an amount as may be found due; an averment of the demand for an account "in order that the complainants might pay," or the prayer to be "let in to redeem on payment," &c., is not sufficient.

Kennebec & Portland R. R. Co. *v.* Portland & Kennebec R. R. Co.

Where there is no allegation of the commencement of a foreclosure, but there is an allegation that possession has been taken as under R. S., c. 51, § 54, and that all claims secured by the mortgage have been paid, or have been so purchased that they should in equity be considered as paid, there need be no other allegation of payment, or of an adequate tender of the amount of overdue bonds and coupons.

BILL IN EQUITY. The case was heard on demurrer. The bill substantially alleges, that the Kennebec and Portland Railroad Company, a corporation, &c., and certain others named, stockholders and bondholders therein, complain against the Portland and Kennebec Railroad Company, a corporation, &c., Richard D. Rice, Darius Alden, Nathaniel M. Whitmore, Sarah Hagar, administratrix of the estate of Marshall S. Hagar, deceased, Geo. F. Patten, John Patten, Wm. D. Sewall, Jos. McKeen, Geo. F. Shepley, John B. Brown and Horatio N. Jose, that, in 1850, the Kennebec & Portland Railroad Company held and owned a railroad extending from Augusta through several towns (named) to Portland, and thence to a junction with the Portland, Saco and Portsmouth Railroad at Cape Elizabeth, with a branch road from Brunswick to Bath; that, in the construction of that portion of said railroad from Augusta to Yarmouth, including said branch road, said corporation issued certificates of stock known as "original stock," to the amount of $700,000, and issued and sold certificates of stock, known as "old preferred stock," to the amount of $240,000, in which last named, dividends of ten per cent. per anum were payable; that, to obtain means for constructing the road from Yarmouth to Cape Elizabeth, said corporation agreed with persons unknown, that, if they would furnish means to construct said portion of said road, exclusive of land damages, &c., said corporation would issue to them certificates of stock, known as Yarmouth stock, and secure to the holders thereof the whole income of said portion, until said persons were paid principal and ten per cent. annual income, and, if at any time, such income were insufficient to pay said dividends, said corporation would make it up to them and secure the payment by a first mortgage

of said portion of said road and franchise, to be held until said amount was fully paid, said portion then to become the property of said corporation; that said corporation issued to said contributors certificates to the amount of $204,200, on which ten per cent. dividends were payable and duly secured the same by mortgage to Reuel Williams, John Patten and J. B. Carroll, in trust, which trust said Williams, Patten and Carroll accepted; that, to construct and equip said road, said corporation, under due legislative authority, borrowed of certain cities and towns, and of certain persons unknown, $800,000, in money and scrip, and secured them by a mortgage of nineteen-twentieths of said road and franchise to commissioners of the sinking fund, provided by the Act authorizing said loan, and another mortgage of one-twentieth of said road and franchise to John Patten, Marshall S. Hagar and Joseph McKeen, in trust, subject to the former mortgage; that, in 1851, said corporation duly issued and sold bonds, known as the first mortgage bonds of the Kennebec and Portland Railroad Company, to the amount of $230,000, payable in twenty years, &c., and duly secured them by a mortgage to Patten, Hagar and McKeen, in trust, subject to the before named mortgages; that, in 1852, said corporation duly issued and sold in part, bonds known as the second mortgage bonds of the Kennebec and Portland Railroad Company, to the amount of $250,000, payable in twelve years, &c., and duly secured the same by a mortgage of said road and franchise to said Patten, Hagar and McKeen, in trust, subject to the previously named mortgages; that in 1854, said corporation duly issued and sold certificates of stock, known as " new preferred stock," to the amount of $120,000, payable, &c.; making the entire cost of said railroad and equipments, $2,544,200; that said Patten, Hagar and McKeen accepted said trusts; and that in 1853, agreeably to a vote of said corporation, said certificates of " old preferred stock" were surrendered and new ones issued to and received by the holders thereof, and the holders of Yarmouth stock relinquished for the benefit of

the holders of said "old preferred stock" four of the said ten per cent.; that, in 1857, said Patten, Hagar and McKeen, by reason of the breach of the condition of said mortgages, duly took possession and management of said railroad, franchise and furniture thereof, and continued to hold the same until 1864, taking all the income, rents and profits.

The bill further alleges that, in 1861, one Allen Lambard, Thos. J. Southard, Abner B. Thompson, said Alden, Whitmore, G. F. Patten and Wm. D. Sewall were duly elected directors of said company, and so continued until 1864, that said Lambard was duly chosen president of said corporation, which several trusts said president and directors respectively accepted; that it was their legal duty to faithfully administer the business of said corporation; that the said trustees in assuming the management of said road were holden to account to the complainants, the K. & P. R. R. Co., for the income and profits actually received and what might have been under efficient management; that they so carelessly, negligently and unskilfully managed the same; that the net earnings were less by $50,000 per annum than if the same had been managed faithfully and in accordance with the fair intents of their trusts.

The bill further avers, that the said trustees, while in possession as aforesaid, combining with said Alden, Whitmore, Sewall and Geo. F. Patten, directors as aforesaid, and a majority thereof, and with said Brown, Shepley and Jose, and with other persons, to the complainants unknown, all of whom, when discovered, the complainants pray may be made parties defendant hereto, contriving to obtain for themselves and their associates the possession, management and ownership of said road, franchise, &c., and deprived the complainants thereof, bought in for much less than the real value thereof, $700,000 of said "original," "preferred" and "Yarmouth stock," bonds, coupons, mortgages, &c., all of which the complainant company were liable to redeem, all of which, stock, &c., were so purchased with money belonging to said company, being the earnings of

said railroad, and by the said trustees, and while in possession, and by said Alden, Whitmore, Sewall and G. F. Patten, directors, and by the said Brown, Shepley and Jose, in connection with said trustees and directors, knowing them to be such and the purposes of such purchases.

The bill further alleges that Reuel Williams, in his lifetime, owning $500,000 of "original," "preferred," and "Yarmouth stock," secured by mortgage of the rolling stock of said road, offered to sell the same to said trustees, for the benefit of the Kennebec and Portland Railroad Co., for less than its value, viz., $113,000, but said trustees, contriving to obtain it for themselves and associates, wrongfully declined to purchase, and thereafterwards the same was purchased by said Rice and Alden for the benefit of said trustees and their said associates, and for the purposes aforesaid, for said sum, which was paid out of the earnings of said company; that instead of surrendering said stock, &c., to said company, as they ought, they claim to recover the same in full of said company.

The bill further alleges that the said Alden, Whitmore, Sewall, and Geo. F. Patten, a majority of said directors, combining with said trustees and their said associates, for the purpose of becoming owners of said railroad, in violation of their trusts, neglected to redeem said bonds, and, in 1863, the complainants, through their president, having brought a bill in equity to redeem the mortgages to secure said bonds, the said Alden, Whitmore, Sewall and Patten, without the knowledge of said Lambard, called and held a meeting of said board of directors, and voted to dismiss said bill, and the same was accordingly done.

It further alleges, said railroad and franchise has been of sufficient value, rightly managed, to have paid the interest upon and redeemed said bonds, and should have been so applied, but said trustees have applied the same to purchase stock, &c., for the benefit of themselves and associates, and allowed said interests to go unpaid, and said bonds, &c., to remain unredeemed; that, subsequent to 1863, but precisely

when, the complainants are not informed, but pray the respondents may discover when they, the P. & K. R. R. Co. were, as they claim, created a body corporate and became possessed of said railroad, &c., claiming to hold it by some title derived through the said Kennebec and Portland Railroad Company, the precise nature of which is unknown to the complainants, and they pray that the respondents may set forth specifically by what title they claim to hold it, if any, and have appropriated the same to their own use and have taken and appropriated the income thereof to their own use, and have not paid the dividends on said "preferred stock," nor the interest on said "first mortgage bonds," &c.; that said Portland and Kennebec Railroad Company, if they hold any legal title to said railroad, &c., which the complainants deny, took the same with notice of the said trusts, and of the equitable rights of the holders of said bonds and· stock to demand and enforce payment of interest, dividends, and principal of said bonds, out of the 'income; that said trustees and directors and their said associates were members of said defendant company.

The bill further alleges, that said Rogers and others are the holders of a large amount of said stock, that said Rich is holder of a large amount of said "first mortgage bonds," on which nothing has been paid since April, 1856; that, in 1862 and in 1865, they duly demanded of said trustees and of the respondents, the 'Portland and Kennebec Railroad Company, a true account in writing of the amount due on the mortgages given to secure said first and second mortgage bonds, and of the income, &c., and money expended in repairs and improvements of said mortgaged premises, in order that they might pay and redeem the same, and that said trustees and the Portland and Kennebec Railroad Company have refused to render such account or to allow the Kennebec and Portland Railroad Company to redeem said mortgages.

The prayer was that the defendant company might answer; that the said Patten, Whitmore and Sarah Hagar may an-

swer whether or not said John Patten and M. S. Hagar, while trustees, were directly or indirectly interested in any purchases of stock, &c., issued by the complainant company, which said company was liable to redeem, &c., whether they were or were to be interested in the purchase by said Rice, whether they ever received any stock, &c., so purchased, when, how much, and what was paid therefor; that said Rice and Alden might answer whether the Williams purchase, &c., was made at the suggestion, &c., of said trustees, or by the direction of, or in behalf of the holders of said bonds; and whether, to their knowledge, information or belief, the said John Patten and Marshall S. Hagar, or either of them, were directly or indirectly interested in said Williams purchase, what amount of original, new and old preferred stock, Yarmouth stock, first and second mortgage bonds, coupons, and claims secured by mortgages on the rolling stock of said railroad, were purchased by them, or either of them, of the said Williams, and what disposition was made of the same by them or either of them, and whether they, or either of them, delivered or agreed to deliver any portion of said purchase, and, if so, what portion to the said John Patten, or to any one for him, to the said Marshall S. Hagar, or to any one in his behalf, to the said Whitmore, Sewall and George F. Patten, and the said Shepley, Brown and Jose, and how much to each, and what was paid therefor, if anything; and that the said Joseph McKeen may answer specifically, whether to his knowledge, information or belief, the said Williams purchase was made at the request, suggestion, or with the knowledge of said trustees or either of them, or by the direction of, or in behalf of the holders of said bonds; and that the said John Patten, Sarah Hagar, Joseph McKeen, Darius Alden, N. M. Whitmore, William D. Sewall, George F. Patten, George F. Shepley, John B. Brown and Horatio N. Jose may answer specifically what amount of stock, bonds, coupons and claims which your orators, the Kennebec and Portland Railroad Company, were liable to pay, they and each of them have

purchased or received, when, of whom, and at what prices, and that the defendants, the Portland and Kennebec Railroad Company, may state the amount of income received by them since they came into the possession and management of said railroad, and that they and the said trustees may be decreed to come to a fair and just account with the plaintiffs, the Kennebec and Portland Railroad Company, in respect to the net income of the said mortgaged premises, and may be enjoined from using or appropriating the income of said railroad property and franchise, otherwise than in accordance with, and fulfilment of the trusts and equitable liens charged upon the same by the Kennebec and Portland Railroad Company, as they shall be found by the Court.

And that the complainants may be let in to redeem the said mortgaged premises on payment to the defendants of what shall appear to be due to them, if anything, after deducting thereout what the said trustees and the said Portland and Kennebec Railroad Company have received or might have received, from the rents, profits and income of said mortgaged premises; and that the said defendants may be decreed to pay unto and account with the plaintiffs, the Kennebec and Portland Railroad Company, for what shall appear to be due, upon taking the said accounts, and deliver possession of the said mortgaged premises to the plaintiffs, the Kennebec and Portland Railroad Company, together with the furniture and rolling stock of said railroad and the books, writings and records relating thereto; and for further relief.

*A. G. Stinchfield*, for the complainants.

*A. Libby*, for P. & K. R. R. Co.

*Bion Bradbury*, for Brown & als., respondents.

DANFORTH, J.—This case is before us on a general demurrer to the complainants' bill. At the argument, several objections were raised; the first of which is, a misjoinder of plaintiffs. In this respect a corporation and a portion of its members are joined.

The bill shows, whatever it may be in other respects, that all its allegations charge the defendants with injuries to corporate property. To the property thus injured, the stockholders had no title or interest whatever; no right to intermeddle with it more than a stranger. "The corporation itself is regarded as a distinct person; and its property is legally vested in itself, and not in its stockholders. As individuals, they cannot, even by joining together unanimously, convey a title to it, or maintain an action at law for its possession, or for damages done to it. The artificial person, called the corporation, must manage its affairs in its own name, as exclusively as a natural person manages his property and business. The officers, though chosen by a vote of the stockholders, are not their agents, but the agents of the corporation, and they are accountable to it alone." *Peabody & al.* v. *Flint & als.*, 6 Allen, 55, 56.

Stockholders undoubtedly have an interest in the property and business of the corporation, which will be protected in equity when invaded. They have equitable rights which, when violated, may be enforced by equitable remedies. "The corporation itself holds its property as trustee for the stockholders, who have a joint interest in all its property and effects, and each of whom is related to it as *cestui que trust.*"

So long as the corporation is faithful to its trust, the stockholders, as individuals, have no occasion and no right to resort to or enforce any remedies, legal or equitable, to vindicate any injury to the corporate property. When it is guilty of a breach of trust, then, and only then, the relationship of the stockholders, arising from that trust, gives them a right to pursue the proper remedy to vindicate their rights. But, in such a case, it necessarily follows that the corporation must, or at least may be, a party defendant; for it is only the violation of the trust existing between the corporation and its stockholders, that gives the latter any occasion for a remedy. These principles appear to have been well settled. *Peabody & al.* v. *Flint & als.*, 6 Allen,

52; *Smith* v. *Hurd*, 12 Met., 371; *Smith* v. *Poor*, 40 Maine, 413; *Hersey* v. *Veazie*, 24 Maine, 9.

In the bill now before us, there is no allegation that the corporation, of which the plaintiffs are members, has been guilty of any violation of its trust, or in any way combined with the defendants to the injury of the plaintiffs, or refused to pursue such remedies as are open to them to protect their property. On the other hand, they are co-plaintiffs in this bill, and, so far as appears, assisting in its prosecution. No decree can be ordered in favor of these stockholders, either for an account or for redemption; for they have no right to the funds of the corporation, nor have they such an interest in the road as would give them a right to redeem. None can redeem except those who have some interest, however small, in the property to be redeemed. 2 Hoffman's Chancery Practice, 156 and note.

To be entitled to redeem property mortgaged, the person must show a title to the equity. 1 Vern., 182. It follows that there is a misjoinder of plaintiffs, for which a demurrer lies. Story's Equity Plead., §§ 232, 544.

Another objection raised to the bill, is, that it is multifarious as respects its subject matter, or a misjoinder of claims therein set out. "There appears to be no positive or inflexible rule as to what, in the sense of courts of equity, shall constitute multifariousness in a bill, but each case must in a great measure be governed by its own circumstances," and much must be left to the discretion of the Court. 1 Daniell's Ch. Pr., 343 and note. Nevertheless, when it clearly exists, a demurrer will be sustained. Story's Equity Plead., § 271.

To support this objection, two things must concur; "first, the different grounds of suit must be wholly distinct; secondly, each ground must be sufficient, as stated, to sustain a bill; if the grounds be not entirely distinct and unconnected; if they arise out of one and the same transaction, or series of transactions, forming one course of dealing, all tending to one end; if one connected story can be told of

the whole, the objection does not apply." Story's Eq. Plead., § 2716 and cases cited in note.

From the bill, we learn that the plaintiff corporation was the builder and original owner of the road therein described; that, becoming embarrassed for want of funds, among other means to relieve themselves, they executed and delivered to three of the defendants, as trustees, two mortgages of the road to secure the payment of certain bonds issued by the corporation, known as first and second mortgage bonds; that, in process of time, the interest on said bonds not having been paid, the trustees and mortgagees took possession of the road for breach of the condition of said mortgages. Then follows a history of the management of the road and the income thereof received by the mortgagees, and the other individual defendants, alleged to have wrongfully and fraudulently combined with them, until they became absorbed in and compose a new corporation; which new corporation is now, as stated in the bill, in possession of the road. Here is a series of transactions, not separate and entirely distinct, but forming one course of dealing, all tending to one end, that of, as alleged, absorbing the road and all its incidents, and all the defendants are combined together to accomplish that end. The statement of all these transactions was proper and necessary, in order to lay the foundation for the prayers for account and redemption. The transactions themselves are so mixed up and intimately connected that, if true, it is difficult to see how justice can be done between the parties without a knowledge of them. Therefore the demurrer, for this cause, cannot be sustained.

Another objection made to the bill is the improper joinder of defendants. If the bill can be sustained against any of the defendants, those only can demur who are improperly joined. Story's Eq. Plead., § 544. In this case it is alleged that all the individuals named as defendants fraudulently combined together, in all the transactions set out in the bill of which the plaintiffs complain. They are all alleged to have been partakers of the income of the road which should

equitably go in payment of the debts secured by the mort-
gages, therefore all should be held to account.   The defend-
ant corporation is now in possession of the road, and, if
they took it under the mortgages, they took it subject to all
payments which may previously have been made; therefore
it becomes important that all who have been connected with
the mortgage, in such a way as to render them liable for in-
come under it, should. be made parties.   Story's Eq. Plead.,
§ 190; *McCabe* v. *Bellows & al.*, 1 Allen, 269.

There is, however, another ground on which these indi-
vidual defendants are properly made parties.   They are all
members of the defendant corporation, and this is a bill of
discovery as well as relief. .  They have information import-
ant to the plaintiffs, and to which the plaintiffs have a right
as the facts now appear.   It is not necessary that each of
the parties should be interested in the whole case.   If they
have information as to a part, and so connected with the
real defendant as to entitle the plaintiffs to their disclosure
under oath, without calling them as witnesses, they are pro-
perly made parties, even though no decree could be made
against them.   Such is the case with members of corpora-
tions.   Story says, in his treatise on Equity Pleading, § 235,
not only that officers, but " the members of corporations may
also be made parties to a bill, either for discovery alone,
or for discovery and relief, although they have no other in-
terest, than as corporators, in the subject matter of the
suit."   See, also, 1 Daniell's Chancery Prac., 134 ; *Wright*
v. *Dame & als.*, 1 Met., 237.

It is further contended that the bill, as a bill of redemp-
tion, is defective in several particulars.   It is said that the
bill can only be maintained on " payment, or on an adequate
and sufficient tender of the amount of the over due bonds
and coupons."   This appears to be a necessary averment to
sustain the bill under the 55th section of chapter 51, R. S.
But it will be noticed that this section refers to the redemp-
tion of mortgages of railroads after the commencement of
proceedings for the purpose of foreclosure.   There is noth-

KENNEBEC COUNTY. 185

Kennebec & Portland R. R. Co. *v.* Portland & Kennebec R. R. Co.

ing in the bill which shows the commencement of any such proceedings; hence, if the bill comes within any of the provisions of that chapter, it is rather under the fifty-fourth section, which provides that the trustees may take possession for the purpose of securing the appropriation of the earnings, or a portion of them, to the payment of such claims as are secured by the mortgage; and, when paid, the road to be surrendered. Accordingly, we find in the bill an averment that all such claims have been paid, or have been so purchased that they should in equity be considered as paid, which seems to be a sufficient averment as the facts now appear.

It is further objected that the bill does not aver that the defendant corporation holds the mortgages, or either of them; but denies all title in them; "nor is there any averment of information or belief, that they hold the mortgage title, or any portion of it." The bill is certainly defective in this respect. If it should appear upon answer and proof that they hold, as suggested in the bill, without title, then the plaintiffs would have an adequate remedy at law, and in such a case, as the bill now stands, if at all, the plaintiffs would not be entitled to a discovery even. It is upon this point that a discovery is asked, and, before it will be ordered, the proper averment must be made, to show that plaintiffs are entitled to it. It would not be according to the principles of equity, to proceed with the case until we have the requisite assurance that the plaintiffs are entitled to a hearing. They may be entitled to a discovery, but it can only be upon the ground of the necessary information, or belief, that the title, when discovered, would be such as to authorize the plaintiffs to proceed in equity.

It is also objected that the bill does not aver an offer to pay such an amount as may be found due. This is also a defect. This offer must be a formal one. The statement of the demand for an account, on the trustees, "in order that they might pay," or the prayer to be let in to redeem on

payment, &c., is not sufficient. R. S., c. 90, § 13; Story's Equity Plead., § 187, a.

The result is, that the bill is defective in the misjoinder of plaintiffs; in the omission to make the proper statement in regard to the title of the defendant corporation, they being the party in possession, and the want of the proper offer to pay the amount due. The first and last defects are amendable, as is also the other, if it can be done consistent with the truth, and will be allowed upon such terms as the Court at *nisi prius* may think proper.

> *The demurrer sustained, and, unless the*
> *bill is amended, it must be dismissed.*

APPLETON, C. J., KENT, WALTON, DICKERSON and BARROWS, JJ., concurred.