# The Tuscaloosa Manufacturing Company et al. v. Cox et al.

*Bill in Equity by Stockholders against Corporation and its Treasurer, to Enjoin the Latter from Acting as General Manager, for a Settlement of his Accounts, and his Removal.*

1. *Directors of corporations; are trustees and have much discretion in managing company's affairs.*—Private corporations are formed for private gain, and the board of directors who are entrusted with the management of its affairs are selected from the stockholders, on account of their supposed fitness for the position, and occupy the position of trustees, to whose judgment and discretion much is confided, and from whom infallibility is not expected.

2. *Stockholders; how may obtain redress when interests of corporation are endangered.*—When the interests of the corporation are suffering, or are likely to suffer, through the inefficiency or faithlessness of any agent or official, an appeal for redress should first be made to the board of directors, or other governing body, and on their failure or refusal to act, the next redress, in ordinary cases, will be found in the power of the ballot, under the charter and by-laws of the corporation; and though there may be cases in which the stockholder may invoke the restraining power of a court of equity in the first instance, it must be a very strong case, showing that an appeal to the board of directors would be of no avail, and delay extremely perilous.

3. *Same; same; rule applied to facts of this case.*—The bill in this case being filed by three of the stockholders in a private corporation engaged in manufacturing cotton goods, two of them being directors, against four other directors who composed the executive committee, and against the corporation, charging that one of said committee, who was also the treasurer and general financial manager of the business, under the superintendence of the committee, was allowed to purchase all supplies from a mercantile firm of which he was a member, at prices greatly in excess of the market rates, whereby he was enriching said partnership, at the expense of the corporation, reducing its dividends, and depressing the value of its stock; and asking the removal of the treasurer and agent, the settlement of his accounts; but not charging any fraud or

[The Tuscaloosa Manufacturing Co. v. Cox.]

had faith on the part of the other members of the committee, nor alleging that redress had been sought through the instrumentalities provided by the charter and by-laws; *held*, that the bill is without equity, and an injunction granted on its filing should be dissolved.

APPEAL from Tuscaloosa Chancery Court.

Heard before Hon. A. W. DILLARD.

This was a bill in equity filed by Geo. W. Cox and others, against the Tuscaloosa Manufacturing Company, its treasurer, B. Friedman, and others. The averments of the bill are clearly summarized in the opinion of the court, and hence need not be stated here. An injunction was granted, on the filing of the bill, and the respondents moved, in vacation, for its dissolution. The Chancellor refused to dissolve the injunction, and this decree is assigned as error.

A. B. McEACHIN, and VAN HOOSE & POWELL, for appellant. The bill is without equity.—*Forbes v. Whitlock*, 5 Edwards, 446; *Denny v. Manhattan Co.* 2 Denio, 115. The bill is without equity, not only because it seeks no relief against the corporation by proper parties, but also because it only seeks it against its agents or subordinate officials, who, as shown by the bill, are under the control of the corporation by its charter and by-laws, and hold their agency by a tenure at will. Code, § 184. "The unwillingness of the corporation to assert its rights lies at the foundation of the stockholder's right of action."—*West. R. R. v. Nolan*, 48 N. Y. 513; *Cogswell v. Bull*, 39 Cal. 325; *Att'y Gen. v. Utica Ins. Co.* 2 John. Ch. 388; 1 Edwards Ch. R. 84; *Allen v. Curtis*, 26 Conn. 456; *Newby v. Oreg. R. R.* 1 Saw. 64; *Robinson v. Smith*, 3 Paige, 222; *Brown v. Lacrosse R. R.* 2 Wall 302; *Denny v. Manhattan Co.* 2 Denio, 115; *Ryan v. Leavenworth R. R.* 21 Kan. 365; *Cross v. Lockett*, 16 How. Pr. 62; Hilliard on Torts, vol. 1 pp. 327, 418; *Colquitt v. Howard*, 11 Ga. 556; *Graves v. Gough*, 69 N. Y. 154; *Foss v. Harbottle*, 2 Hare, 461; *Manly v. Alston*, 1 Ph. 990; Angell & Ames on Corporations, § 14, L. R. 4 Ch. Appl. 336; Sperring's Appeal, 71 Pa. 11.

The bill is not filed in the name of complainants and all other stockholders desiring like relief, and without this averment the complainants have no standing in equity.—*Smith v. Huckabee*, 53 Ala. 196; *Whitney v. Mayho*, 15 Ill. 251; *Brown v. Lacrosse R. R.* 2 Wall. 283; *Baldwin v. Lawrence*, 2 Sim. St. 18; *Coleman v. E. C. R. R.* 10 Beav. 1; *Bliss v. Anderson*, 31 Ala. 612.

The bill should have been filed against the delinquent treasurer and the directors personally.—*Robinson v. Smith*, 3 Paige, 222; Angell & Ames on Corporations, § 171; *Att'y*

[The Tuscaloosa Manufacturing Co. v. Cox.]

*Gen'l v. Wilson,* 1 Craig & Ph. 1; 10 L. I. U. S. 53; 4 Jurist, 1174; *Hill v. Frazier,* 22 Pa. St. 320.

There was no breach of duty or of trust in buying the cotton, or authorizing it to be bought, by any one whom the directors might select for the purpose, and a court of chancery has no power over a corporation to restrain acts within the corporate powers.— *Verplank v. Mer. Ins. Co.* 1 Edw. 84; *Att'y Gen'l v. Earl of Clarendon,* 17 Ves. 491; *Fountain F. T. R. R. v. Jewell,* 8 B. Mon. 142.

S. A. M. WOOD, and J. M. MARTIN, for appellees.—"The persons who become directors or managers of a corporation place themselves in the situation of trustees, and the relation of trustees and *cestuis que trust* is thereby created, for the time being, between them and the stockholders."—*Scott v. Depuyster,* 1 Edward Ch'y R. 542; *Verplank v. Mercantile Ins. Co.* 1 Edward Ch'y R. bottom p. 87; Field on Corporations, §§ 172, 173, 174, 400, 402, 408; Angell & Ames on Corporations, § 313.

A court of chancery may interfere to prevent the misapplication of corporate assets at the suit of a single stockholder. High on Injunctions, § 767; *French v. Gifford,* 30 Iowa R. 148; *Wright v. Oroville M. Co.* 40 Calk. 20; *Robinson v. Smith,* 3 Paige's Ch. R. p. 233.

The failure of the executive committee to prevent Friedman, the treasurer, from purchasing of his own firm, and *for his own profit,* on account of the corporation, was "not an error of judgment merely." It was made the duty of said committee to see that the treasurer's books, accounts and vouchers were correct, and that he was not misapplying the company's money; and the non-performance of a confessed official obligation, amounts to what the law considers a *breach of trust,* even though it may not involve intentional moral delinquency.—*Dodge v. Wolsey,* 18 Howard U. S. R. 345.

STONE, J.—The Tuscaloosa Manufacturing Company, as its name imports, is a private corporation, created and organized for pecuniary profit. It is a corporation aggregate, having a plurality of corporators, and the purpose of its creation is the manufacture of cotton yarns and cotton goods. Its capital stock is made up of shares, owned by nine shareholders—seven of them owning each five thousand dollars of the stock—an eighth one, forty-five hundred dollars, and the ninth one, one hundred dollars. Seven of the nine shareholders are directors of the company, of whom one was elected, and is acting as president. The remaining two shareholders are females, the sum of whose shares aggregate nine

thousand five hundred dollars. Four of the directors, including the president, and owning twenty thousand dollars of the capital stock—a fraction over half—constitute an executive committee, authorized by the by-laws, and clothed with large powers of control and management, particularly during the recesses of the directors' sessions. One of the executive committee—Friedman—is treasurer, and general financial manager, under the superintendence of the executive committee. Friedman is a wholesale and retail dry goods merchant, and engaged also in the purchase and sale of cotton. The corporation kept a retail store near its factory, mainly for the purpose of supplying its employees with merchandise. Under the by-laws there was a superintendent of the factory, and also a general manager—the latter with large powers. The bill in this case was filed by two of the directors and one of the female stock-holders—the three representing fifteen thousand dollars of stock ; filed in their own names as stock-holders, and the four directors who compose the executive committee, together with the manufacturing company, are made defendants. The gravamen of the bill may be summarized as follows : The bill charges that by the by-laws, it is made the duty of the managing agent to purchase the cotton for the factory, and the merchandise for the store ; that Friedman, the treasurer, a member of the executive committee, usurped, or was permitted to exercise this purchasing function, and that he purchased both the cotton and merchandise from a firm of which he was the active member, at prices very materially in excess of the rates at which they could have been purchased from other parties, by which he was enriching his mercantile firm at the expense of the corporation ; and that the other members of the executive committee approved his bills, and allowed him to pay himself these excessive charges, out of the moneys of the corporation. The bill charges bad faith on the part of Friedman, and an intention to injure the corporation, reduce its dividends, and depress the value of its stock, all for his own private emolument. There is no charge of fraud or bad faith against the other members of the committee, nor of an intent to benefit themselves, or to injure the stock-holders, or the corporation itself. If the bill can be construed as a charge in any respect against the other members, it is only an implied complaint that they confided too much in Friedman, and thus enabled him to enrich himself at their expense. The by-laws of the corporation require a meeting of the board of directors to be called whenever two members of the board request it. There is no averment that any such request was ever made, or that any attempt was made to ob-

[The Tuscaloosa Manufacturing Co. v. Cox.]

tain redress from the board of directors. The bill prays that Friedman be enjoined from making purchases—that a receiver be appointed—and that an account be taken. There is no prayer for a final account of the corporate dealings. The object of the bill is the removal of Friedman, and the settlement of his accounts. It is, perhaps, due to Mr. Friedman that we should say, although not material in considering the equity of the bill, that he and the other three members of the executive committee have answered the bill under oath, and have substantially denied every allegation of fraud, or bad faith charged therein. It is manifest he still retains the confidence of the executive committee.

Private corporations, like partnerships, are formed for private gain. Their conduct and management are usually confided to a governing body, called a board of directors. These, in most cases, are chosen from the stock-holders, and are selected on account of their supposed fitness for the trust. Harmony in policy and in counsel, is one of the conditions of success. No man, or body of men can be supposed to be infallible. The wisest are liable to mistakes. Few, if any, of mature years, have been so wise or prescient, as not to find in a past experience many steps taken, or acts done, which we now know were blunders. Even in pending transactions, an association of persons would rarely be found, each individual member of whom would agree on the same line of policy. The opinions of men are as variant as their faces. Hence, in the government of corporations, much must be left to the judgment and discretion of the directory, and much must be credited to the fallibility of human judgment. If it be supposed an unwise course is being pursued, or that the interests of the corporation are suffering, or likely to suffer through the inefficiency or faithlessness of an official, an appeal should first be made to the directory or governing body, to redress the grievance. Failing there, in ordinary cases the next redress will be found in the power of the ballot, which usually comes into exercise at short intervals. We will not say there may not be cases, in which the strong, restraining arm of the Chancery Court may be invoked in the first instance. The whole governing force may become corrupt, or may enter into a combination, either *ultra vires*, or so destructive of the policy and property of the corporation, as to show an appeal to the directory would be fruitless, and delay extremely perilous. It should be a strong case, however, to justify such interferences. To allow it in cases of mere divergences of judgment as to whether this or that line of policy, each within the pale of the corporate power, will best promote the enterprise, would imperil the existence of

· [The Tuscaloosa Manufacturing Co. v. Cox.]

every moneyed corporation in the land. True, the directors are trustees of the powers and property of the corporation, and the share-holders are the beneficiaries. They can exercise no power not within the province of the charter, and they must bring to the service fidelity to the welfare of the beneficiaries, and diligence in the performance of their duties. They are not guarantors that the methods they adopt will lead to the most prosperous results, contingencies, against which the most prudent cannot provide, often thwart the wisest laid schemes. To allow a dissatisfied minority to arraign the directors before the courts of the country, whenever in the opinion of such minority a wiser or better policy could have been pursued, would practically put an end to the benefits claimed to result from associated capital.

In *Scott v. Depuyster*, 1 Edw. Ch. 513 and 542, it is said : " No man who takes upon himself an office of trust or confidence for another, or for the public, contracts for more than a diligent attention to its concerns, and a faithful discharge of the duty which it imposes. He is not supposed to have attained infallibility ; and therefore does not stipulate that he is free from error. Persons who become directors or managers of a corporation, place themselves in the situation of trustees, and the relation of trustee and *cestui que trust* is thereby created between them and the stock-holders."

In *Greaves v. George*, 69 N. Y. 154, is this language : "There is no doubt that a stock-holder has a remedy for losses sustained by the fraudulent acts, and for the misapplication or waste of corporate funds and property by an officer of a corporation ; but the weight of authority is in favor of the doctrine that an action for injuries caused by such misconduct must be brought in the name of the corporation unless such corporation or its officers, upon being applied to for such a purpose by a stock-holder, refuse to bring such action. In that contingency, and then only, can a stock-holder bring an action for the benefit of himself and others similarly situated, and in such an action the corporation must necessarily be made a party defendant. When a stock-holder brings such an action, the complaint should allege that the corporation, on being applied to, refuses to prosecute ; and as this averment constitutes an essential element of the cause of action, the complaint is defective and insufficient without it."

The case of *Brewer v. Boston Theatre*, 104 Mass. 378, was very like the present in its principles, except in that case the abuses and faithlessness charged were much more marked than any averred in this record. In that case, as in this, the bill was filed by stock-holders. The court, in holding the demurrer to the bill well taken, gave the following reasons :

[The Tuscaloosa Manufacturing Co. v. Cox.]

" 1. It is not alleged that any effort has been made to set the corporation in motion, for the purpose of securing its own redress.

" 2. No application to the directors to take action in the matter is alleged. . . .

" 3. In the first and second bills it is alleged, that a majority of the present board of directors of said defendant corporation are acting in the interest of, and are under the control of, said Tompkins and Thayer. [Tompkins had been a director.] But this does not show that they are wilfully disregardful of the interests of the corporation ; or that they would so act, if informed of the injurious effect of their action ; or that they would yield to the influence or control of Tompkins and Thayer, if aware of the purpose and uses for which that influence is exerted. It is not equivalent to a request and refusal of the use of the corporate name and authority for the redress of the wrongs complained of ; nor does it show that such an application, upon a suitable representation of the facts, would be unavailing.

" 4. The same considerations apply to the allegations in the third bill, so far as they apply to present directors. It is alleged that they have allowed themselves to become little else than the creatures of Tompkins and Thayer, and the register of their wishes, and have come to consider that no duty rested, or none rests upon them as directors, to do more or other than to make said corporation, and the property of the plaintiffs therein invested, serviceable to Tompkins and Thayer. The phraseology of this general statement does not comport with the directness and certainty required of [in] legal averments ; and we do not think that any process of elimination would educe from it the proposition that the present directors of the corporation are so hostile to its interests, and to any judicial proceeding for their protection, as to make proceedings in this form necessary." In the case of *Allen v. Curtin*, 26 Conn. 456, the court said : " An individual stock-holder may maintain a petition in equity against the directors of a corporation for misconduct in office, where the corporation is unable to bring a suit at law, or where, through collusion or fraud, it neglects to seek redress, and an application has been made to the directors for the use of the corporate name to bring suit, which has been refused." In *Cogswell v. Bull*, is this language : " The general rule is that an action against trustees of a corporation for a misappropriation of its funds, must be brought in the name of the corporation. The funds which are misapplied are the property of the corporation, as such, and the action to recover them must be brought in its name, unless in excep-

tional cases. One of the exceptions is, where a corporation on a proper demand from a stockholder, refuses to institute the action."—39 Cal. 320. In *Smith v. Poor*, 3 Ware, 148, the principle is thus stated : "The corporation, and not individual stock-holders, must bring suit in case of injury to the corporation by the directors. But if the acting directors refuse to bring suit, then an action in equity may be commenced by any stock-holder personally, for himself and others, against such directors." The case of *Foss v. Harbottle*, 2 Hare, 461, was a suit by share-holders, and involved the use and enjoyment of very valuable property. The bill was by two of the share-holders, on behalf of themselves and all others, the proprietors of shares, except the five directors, and another share owner, not a director, who were made defendants, together with the solicitor and the architect. Three of the five directors were bankrupts. The bill charged the defendants " with converting and effecting various fraudulent and illegal transactions, whereby the property of the company was misapplied, aliened and wasted ; that there had ceased to be a sufficient number of qualified directors to constitute a board ; that the company had no clerk or office; that in such circumstances the proprietors had no power to take the property out of the hands of the defendants, or satisfy the liabilities, or wind up the affairs of the company." The bill prayed for a receiver, and that the defendants be decreed to make good the loss. There were other prayers in the bill. It will be observed that in this case all the directors were charged with the commission of the fraud, and it would be difficult to conceive of a stronger case than that made by the bill. There was a demurrer to the bill, which was sustained. It was ruled that, on the facts stated, " the continued existence of a board of directors *de facto* must be intended ; that the possibility of convening a general meeting of proprietors capable of controlling the acts of the existing board was not excluded by the allegations of the bill ; that in such circumstances there was nothing to prevent the company from obtaining redress in its corporate character in respect of the matters complained of, and that therefore the plaintiffs could not sue in a form of pleading, which assumed the practical dissolution of the corporation." This, we conceded, is an extreme case, and goes farther than the wants of the present case require us to go. Of similar bearing to the above are the following numerous authorities—Ang. & Ames on Corp. § 312 ; Cooley on Torts, 518 ; *Farben v. Whitlock*, 3 Edw. Ch. 446 ; *Colquitt v. Howard*, 11 Ga. 556 ; *Mozley v. Alston*, 1 Phil. Ch. 780 ; *Bayless v. Orme*, 1 Freem. Ch. 161 ; *Atty. Gen'l v. Utica Ins. Co.* 2 Johns. Ch. 371 ; *R. & P. R. R.*

[The Tuscaloosa Manufacturing Co. v. Cox.]

*Co. v. P. & R. R. R. Co.* 54 Me. 173 ; *Western R. R. Co. v. Nolan*, 48 N. Y. 513.  The following cases, properly applied to their own special circumstances, give no aid to the present bill.—*Dodge v. Woolsey*, 18 How. U. S. 331 ; *French v. Gifford*, 30 Iowa, 148 ; *Robinson v. Smith*, 3 Paige 222 ; *Cross v. Sackett*, 16 How. Pr. 62 ; *Atty. Gen'l v. Wilson*, 1 Cr. & Phil. 1 ; *Wright v. Obaville Man'f'g Co.* 40 Cal. 20.

In *Smith v. Prattville Man'f'g Co.* 29 Ala. 503, speaking of the power of directors of a corporation, this court said : " It is not the meaning of the contract that the partial inconvenience of a member should prevail over the interest of the company, or that the right of a member to receive dividends should be absolute and unrestricted.  The managers are officers of the company, and trustees of the stock-holders. In both capacities they are clothed with a large discretion," &c.  *  *  But when they have exercised it, without any violation of the charter or constitution of the company, their action cannot be disregarded, or controlled by any court at the instance of a stock-holder, unless it is shown to have been a wilful abuse of their discretion, or the result of bad faith, or of a wilful neglect or breach of a sworn duty."

It is so reasonable—so clearly promotive of the aims and interest of private corporations, that every remedial agency the charter furnishes, should be first applied to, before the powers of the Chancery Court can be invoked at the instance of share-holders, that we are not surprised at the uniformity of rulings on the question.  True, as we have said, there may be cases of flagrant abuse and pressing peril, which would justify a bill in the first instance.  The present bill falls very far short of making such a case, and consequently, the bill, as framed and amended, contains no equity.

The decree of the Chancellor is reversed, and this court, rendering the decretal order the Chancellor should have rendered, doth order and decree that the injunction granted in this cause be, and is dissolved, for want of equity in the bill. Let the appellees pay the costs of appeal in this court and in the Chancery Court.

Cause remanded.

SOMERVILLE, J., not sitting.