# Jefferson County Savings Bank *v.* Francis.

*Bill in Equity by Stockholder to have Trust declared in Certain Property for the Benefit of the Corporation.*

1. *Right of stockholder to file bill to redress corporate wrongs.*—Before a stockholder can maintain a suit in his own name to redress alleged corporate wrongs, he must show to the satisfaction of the court that he has done all in his power to obtain within the corporation itself the redress of the wrongs complained of, that he has made an honest effort to get the governing body of the corporation to remedy the wrong, and failing with them, he then pleaded with the corporation as a body to take action towards redressing the grievances complained of, or that there existed such a state of facts as would render such effort on his part futile and useless.

2. *Same; conveyance of corporate assets; right of stockholder; equity of bill.*—Where one, who owns a large majority and all but twenty shares of the capital stock of a corporation, induced the directors to make a deed to him conveying certain land which the corporation had purchased, but the legal title of which remained in its vendor, and after the execution of such conveyance said stockholder executed a mortgage on said land to a third person, who, upon default in the mortgage debt, foreclosed the mortgage and purchased the land at

the foreclosure sale, there is no equity in a bill filed by the owner of the remaining stock, individually, to annul the transaction by which such stockholder acquired the equity in said land and to have the mortgagee and purchaser at the foreclosure sale declared a trustee of the land or its proceeds, for the benefit of the corporation and its stockholders, which avers the facts above set out, but which does not aver that the said corporation was insolvent, or that the business of the corporation was abandoned, or that the corporation was free from debt, or that the alleged wrongful act was fraudulently accomplished, and had resulted in injury to the corporation and its stockholders, or that the mortgagee took the mortgage with notice of the fraud and of the equity of the corporation, and fails to aver that complainants had, prior to the filing of the bill, made an earnest but futile effort to induce action for redress by the corporation, or that there existed a state of facts that excused such effort.

3. *Same; same; individual right of stockholder; equity of bill.*—In such a case, when a bill is filed by a minority stockholder in his own behalf as an individual and for his own benefit solely, and seeks to have decreed to himself directly such interest as he, by virtue of his ownership of stock in the corporation may have in the property alleged, to be held under an imposed trust, and it is not shown that there are no creditors or other stockholders, or that the corporation is not actively carrying on the business for which it was organized, and there is averred no cause for the appointment of a receiver and the winding up of the corporate affairs, such bill is wholly without equity.

4. *Same; same; same.*—The fact that the complainant in such a bill, prior to the foreclosure of the mortgage, obtained from the mortgagee a recognition of his claim against the land to the extent of a certain named sum, and the mortgagee released the mortgage to such amount in complainant's favor, does not give equity to the bill, and does not entitle the complainant to have the defendant account to him for his individual interest in the land; since the only claim or interest which such facts show the complainant had is merely such equitable right as every stockholder has in the assets of the corporation, and a court of equity can not thus carve out and set apart to the stockholder his aliquot share of the assets of the corporation, which, for aught that is shown, is solvent and in the active exercise of its franchises.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on February 20, 1890, by the appellees, R. W. Francis and John S. Storrs, against the Jefferson County Savings Bank. The purposes and averments of the bill and the facts of the case are sufficiently stated in the opinion.

[Jefferson County Savings Bank v. Francis.]

JOHN P. TILLMAN and J. E. MILES, for appellant.—The bill in this case is without equity.—That Francis' interest in the property and assets of the Excelsior company was not such as to authorize relief under the bill in this cause, is settled by the following decisions: *Parker v. Bethel Hotel Co.*, 34 So. West. Rep. 209; *Wheelock v. Moulton*, 15 Vt. 519; *Humphreys v. McKissock*, 140 U. S. 304; *Van Allen v. Assessors*, 3 Wall. 584; *Baldwin v. Canfield*, 26 Minn. 43, (1 N. W. Rep. 261); *Button v. Huffman*, 61 Wis. 20, (20 N. W. Rep. 667); *Smith v. Hurd*, 12 Metc. 371-385; *Waltham Bank v. Waltham*, 10 Metc. 334; *Tippets v. Walker*, 4 Mass. 595; Ang. and Ames on Corp. §§ 40, 46, 100, 160, 190, 191, 557, 591, 595, 779 a.; *Pope v. Brandon*, 2 Stew. 401; *Whitwell v. Warner*, 20 Vt. 444; *Bradley v. Holdsworth*, 3 Mees. & W. 422; *Hyatt v. Allen*, 4 Am. Corp. Cases, 624; *Wilde v. Jenkins*, 4 Paige, 481; *Mickles v. Bank*, 11 Paige 118; *City of Utica v. Churchill*, 33 N. Y. 161; *Railroad Co. v. Railroad Co.*, 23 Minn. 359; *Bennett v. Am. Art Union*, 5 Sandf. (Sup. Ct.) 614; *Goodwin v. v. Hardy*, 57 Maine 143; *Smith v. Huckabee*, 53 Ala. 191; *Paschall v. Whitsett*, 11 Ala. 472.

ALEX T. LONDON and JOHN LONDON, *contra*.—1. The rule is settled in this State that "on a motion to dismiss for want of equity, the bill will be considered as if it had already been amended in all particulars in which amendments are proper."—*Haynes v. Short*, 88 Ala. 562; *Bell v. Montgomery Light Co.*, 103 Ala. 275; *Pate v. Hinson*, 104 Ala. 599.

2. In a court of equity the shareholders are the real owners of the property of the corporation, and creditors being out of the way, are entitled to an interest therein proportionate to the number of shares held by each; and when the shareholders are reduced to two, and the holder of a majority of the stock wrongfully conveys away the whole assets of the corporation, and practically abandons and dissolves the corporation, then, and in such case, the stockholder can and may bring a suit in his own name in a court of equity against the wrongful holder of the corporate property to assert and fasten a lien for his proportionate share of the assets as upon a dissolution. Such suit is not for the benefit of the corporation, the only other shareholder in which is the

author and perpetrator of the wrong complained of ; and manifestly no demand on the corporate authorities for action by them is either necessary or proper. The equities of the stockholder can be and will be worked out and protected by the court, and a decree declaring and enforcing the same can be made without winding up the corporation, or interfering with its franchise.—Morawetz on Corporations, §§ 227, 311. When the offending officers, as here, constitute a controlling majority of the stockholders, the action must necessarily be brought by the individual stockholder or stockholders who finds himself or themselves in the minority.—Cook on Stockholders, §§ 645, 648 ; 4 Thompson on Corporations, § 4545 ; *M. & O. R. R. Co. v. Nicholas,* 98 Ala. 92 ; *Ervin v. Railway & Nav. Co.,* 20 Fed. Rep. 577 ; *Fougeray v. Cord,* 50 N. J. Eq. 185 ; *Robinson v. Smith,* 3 Paige 222 ; *Pratt v. Pratt,* 33 Conn. 446.

BRICKELL, C. J.—The bill of complaint in this cause was filed on February 20th, 1890, and thereafter and before answer the defendant filed a motion to dismiss the bill for want of equity and a demurrer. The demurrer was overruled, but no action was taken on the motion to dismiss. Thereupon the defendant filed its answer, and after the taking of testimony the cause was submitted for decree on November 14th, 1895, and on the same day a decree was rendered declaring the complainants entitled to relief, and ordering a reference to the register. Upon the coming in of the register's report, there being no exceptions thereto, the cause was submitted for final decree, and a decree was rendered granting the relief prayed for. Subsequently an application for a rehearing was granted, and thereafter the cause was again submitted for final decree, the submission including defendant's motion to dismiss for want of equity and demurrer, and a final decree was rendered overruling the demurrer and granting relief, but the decree was silent as the motion to dismiss, and no action is shown to have been taken on it. Rule 76 of Chancery Practice provides that the defendant may, at any stage of the cause, move to dismiss the bill for want of equity, unless a similar motion has been previously made and determined, and that such motion may be made and heard in connection with the final hearing. The rendi-

tion of the final decree involved the overruling of the motion to dismiss, and as this is assigned as error, we will direct our attention to the question whether, under the facts stated in the bill, a case of equitable cognizance is presented.

The averments are substantially as follows: "Some time ago" R. W. Francis was the owner of twenty shares of the capital stock of the Excelsior Foundry & Machine Co., "a corporation doing business at Avondale, in Jefferson county, Alabama," the balance of the stock being held by other parties, one of whom was J. M. Carter; that said company had purchased a lot from the Avondale Land Co., the legal title to the same being retained in the vendor; that said Carter "purchased, or by some means obtained the majority of the stock of said Excelsior F. & M. Co., the exact amount of his holdings is not known to complainants, but they were informed and believe that said Carter held all of the stock of said Excelsior F. & M. Co., except the twenty shares held by said Francis. The said Carter induced the directors of the said Excelsior F. & M. Co. to order said Avondale Land Co. to make a deed conveying said land to said Carter, as complainants are informed and believe, but the means by which said deed was obtained, or by whose direction it was made, are not known to complainants;" that said Francis did not authorize the making of said deed, nor did he have notice of any stockholders' or other meeting called for the purpose of authorizing the making of the same; that the Avondale Land Co. made and delivered to Carter a deed conveying to him said land, and neither of said complainants knew of the making of the same; that after obtaining said deed, on July 15th, 1887, Carter executed and delivered to the defendant a mortgage, conveying to it said land and the improvements thereon to secure an indebtedness of $5,000; and that on August 3d, 1887, he conveyed said land by a deed of bargain and sale to the Ellen Ross Iron Works, a body corporate. On August 22d, 1888, the debt to defendant being due and unpaid, the mortgage was foreclosed and the defendant became the purchaser of the land at the sale at the price of $6,086.46, and took possession of the property; and that it claims that by said foreclosure the right of redemption of both Carter and the Ellen Ross Iron Works was lost. The bill then alleges that when

complainants ascertained the facts above recited, they called upon the defendant and asserted their claim upon and interest in said land and that "on December 9th, 1887, an agreement and composition was made between defendant and complainants whereby defendant recognized the claim of complainants to the extent of $1,000 as against said real property conveyed to it by Carter, and the defendant then and there, acting by and through its president, C. F. Enslen, released its mortgage on said real estate in favor of complainants to the extent of $900 in favor of R. W. Francis, and $100 in favor of said Storrs." A memorandum of said agreement and release was then and there made and signed by C. F. Enslen, president of the defendant bank, and was attached to the record of said mortgage in the probate court of said county, and is in words and figures as follows: "I hereby state that R. W. Francis and John S. Storrs have claims on the land conveyed by J. M. Carter to the Jefferson County Savings Bank by the mortgage to the record of which this is attached, for $900 and $100, respectively, and that said mortgage is as to said amounts released. December 9th, 1887. (Signed) C. F. Enslen, Pres." That the "interest of John S. Storrs in said property arose out of a transfer, or agreement to transfer, part of said stock held by said Francis made by said Francis with said Storrs, and said stock not having been transferred, the said agreement of defendant with complainants was made jointly as stated;" that complainants' claim upon said land was a valid and subsisting one at the time of said foreclosure, and that defendant having taken possession of all of said property under said foreclosure at said bid of $6,086.46, has made itself a trustee of the amounts of complainants' said claims with interest thereon; and that it has not paid to any one any part of its bid, and has not accounted for any part of complainants' claim on said land. The bill prays for a decree ascertaining the amount of complainants' claim and declaring defendant liable therefor, and that upon default in the payment of the amount ascertained to be due, said land be sold for the satisfaction of the same, and for general relief. We have given above all the allegations of the bill in the order in which they are averred.

The very meager statement of facts in the bill makes it difficult to determine the theory upon which com-

plainants base their right to relief. If we consider the
bill apart from the averment as to the transaction be-
tween complainants and defendant resulting in the alleged
agreement and composition above recited, the particular
grievance complained of seems to be that the interests of
the Excelsior Foundry & Machine Co., and those of the
complainants as stockholders therein, have been injured
by the act of Carter inducing the directors of said corpo-
ration to authorize the Avondale Land Co. to convey to
him the legal title to certain lands in which the Excelsior
Co. had an equity arising from a contract of purchase.
Whether this was a perfect equity arising from the pay-
ment of all the purchase money, or a mere right to en-
force the specific performance of an executory contract to
sell; whether it was a valuable asset of the corporation,
the misappropriation of which worked an injury by
diminishing its assets, or whether it was a burden im-
posed by the obligation to pay the purchase money, to
be relieved from which was a distinct benefit, does not
appear from the allegations of the bill.

In order to sustain the equity of the bill, thus consid-
ered, we would have to assume that, at the time of the
filing of the bill, complainants were in fact stockholders
in said corporation; that Carter had made an unlawful
use of his power as a majority stockholder and had
wrongfully and fraudulently procured the making of said
deed without any consideration moving to the corpora-
tion, and that said wrongful act had in fact diminished
the assets of the corporation and resulted in consequent
injury to the interests of the corporation and the com-
plainants as stockholders thereof; that the defendant had
taken its mortgage on said land with notice, actual or
constructive, of the equity of the corporation and the
fraudulent act of Carter; and that the complainants had,
prior to the filing of the bill, made an earnest but futile
effort to induce the directors of said corporation to insti-
tute proceedings to obtain redress of the grievance com-
plained of, or that a state of facts existed which would
excuse such effort; since not one of these facts is stated
in the bill. We can not, even for the purpose of deter-
mining a motion to dismiss for want of equity, assume
the existence of these facts, so essential to the equity of
a bill of this character, which seeks to have a subsequent
purchaser of the property supposed to have been misap-

propriated, declared a trustee and compelled to account as such.

A court of equity undoubtedly has jurisdiction, in case of fraud, abuse of trust, or misappropriation of corporate funds or property, to grant relief and compel a restitution or accounting. But in order to invoke this jurisdiction the act complained of must have been fraudulent, illegal or *ultra vires,* and results in injury to the corporation and the interests of the stockholders. And since the wrong is committed primarily against the corporation, when such relief is sought at the instance of a stockholder, it must clearly appear that, prior to the institution of the suit, he had made an earnest effort with the managing body of the corporation to induce remedial action on their part, and had failed therein, or that facts exist which would render such efforts futile and useless. When a stockholder makes the suit his own there is no equity in his bill in the absence of averments showing these facts. These principles have been so frequently considered and determined in this court that they require no further discussion here.—*Tuscaloosa Mfg. Co. v. Cox,* 68 Ala. 71; *Merchants & Planters Line v. Waganer,* 71 Ala. 581; *Roman v. Woolfolk,* 98 Ala. 237; *Steiner v. Parsons* 103 Ala. 220; *Bridgeport Development Co. v. Tritsch,* 110 Ala. 274; *Decatur Mineral Land Co. v. Palm,* 113 Ala. 531. For aught that appears in the bill to the contrary, the Excelsior Foundry & Machine Co. was in active existence at the time of the filing of the bill, having a board of directors and other officers, who would willingly have instituted proceedings to obtain redress for any wrong committed against the corporation. Carter may have paid a fair and adequate price for the equity of the corporation in the land conveyed to him, and the entire transaction may have been legal and attended with the utmost good faith, resulting in benefit rather than detriment to the corporation and its stockholders; and the defendant may have been an innocent purchaser of the land by mortgage. Not one of these facts is controverted in the bill, either by direct averment or by inference from other facts averred. Considered, therefore, as a bill by a stockholder to annul the transaction or contract by which Carter acquired the equity of the corporation in the land and the subsequent legal title, and to declare the defendant a trustee of the

land or the proceeds thereof, its averments are totally insufficient to justify the interference of a court of equity. And the want of equity in the bill is more apparent when it is considered that the bill is filed by the complainants in their own behalf as individuals, and for their own benefit solely, and seeks to have decreed to themselves directly such interest as they, by virtue of their ownership of stock in the corporation, may have in this property, supposed to be held under such an imposed trust. Whatever might be the equity of a bill filed for such a purpose where it clearly appears that the business of the corporation has been abandoned, and the corporation become inert and practically dissolved, and that there are no other stockholders than those made parties to the bill, and no creditors ; it is clear, on principle, that such a bill cannot be maintained where there are creditors and other stockholders, and the corporation is actively carrying on the business for which it was organized, and no cause exists for the appointment of a receiver and the winding up of the corporate affairs. A court of equity can not thus carve out and set apart to a stockholder his aliquot share of the assets of a solvent corporation in the active exercise of its franchises. As shown above, there are no facts averred in the bill from which it can even be inferred that the business of the corporation has ever been abandoned, or the corporation become inert, or that Francis and Carter were the only stockholders at the time the bill was filed, or that the corporation was free from debt. It is true, the bill alleges, on information and belief—and for the purpose of determining the equity of the bill we must consider this as an averment of fact—that at a time not stated, Carter owned all the stock except that held by Francis, but it is immediately followed by the averment that Carter induced the *directors of the company* to authorize the making of the deed conveying the land to him. At the time the act complained of was committed, and presumably at the time the bill was filed, there must, therefore, have been other stockholders ; and their interests would require that whatever of misappropriated property might be restored should become a part of the general assets of the corporation, for the benefit, primarily, of the creditors, if any existed, and ultimately of all the stockholders.

Nor is the equity of the bill aided by the averment as to the transaction between the parties resulting in the agreement by which the defendant "released its mortgage on said real estate to the amount of $900 in favor of R. W. Francis and $100 in favor of said Storrs." Neither the agreement nor the instrument which was signed by the defendant in pursuance thereof is susceptible of any construction which can give to complainants any standing in a court of equity on the averments of the bill. The agreement was to release the lien of the mortgage to the extent of complainants' claim of $1,000, and the instrument signed and attached to the record of the mortgage was an execution of this agreement. But the release of itself did not vest in complainants any title, legal or equitable, to the property. It did not operate to prevent the defendant from foreclosing its mortgage and making thereby the full amount of its debt; nor did the fact that the defendant at the foreclosure sale sold the entire fee in the land, give to complainants any right to the proceeds of the sale, or make the defendant a trustee of any part of such proceeds of sale, if the amount bid did not exceed the amount of its debt with interest and all the expenses of the sale, including such charges as were authorized by the mortgage. Such claim as the complainants had before the release and before the sale still remained in them. They stood in the same position afterwards as before; they had the same rights and the same remedies for their enforcement. The utmost effect of the release was, perhaps, to estop the defendant, in the event complainants should institute proceedings to assert their claim to or interest in the land, to set up its mortgage and the *bona fides* of the transaction by which it was acquired as a defense, and, possibly, to deny the money value of their claim. Having released the mortgage as to complainants, it could not afterwards, if there was a valid consideration for the release, use it to defeat a claim upon the land which complainants might have and assert in their own right. But the only claim or interest which complainants are shown to have had, was merely such equitable interest or right, as every stockholder has in the assets of a corporation, which, generally speaking, was the right of a stockholder to share in the final distribution of such assets as might remain, upon its dis-

solution, after the payment of all its debts, and the con-consequent right to sue, in the manner pointed out above, to compel the restitution to the corporation, and not to themselves individually, of such assets as might have been converted or misappropriated to the injury of the corporation and its stockholders. Even this right Storrs did not possess, since he never was a stockholder, and any suit which Francis might institute in a court of equity to assert his right, would be subject to the principles above stated. Neither the release nor the estoppel arising therefrom, could operate to give to a court of equity jurisdiction, under the averments of this bill, at the instance of the complainants in their own names and for their own benefit, to carve out their interest in the land and decree it, or its value, to them directly.

The conclusion we reach is, that the motion to dismiss the bill for' want of equity was well taken, and should have been sustained. This renders unnecessary a consideration of any other question the assignments of error involve.

The decree of the chancellor is reversed, and a decree will be here rendered dismissing the bill for want of equity.

PER CURIAM.—We have carefully examined the application for rehearing, and without entering anew into a discussion of the case, it is sufficient to say, that we feel constrained to adhere to the former opinion. But on consideration, we deem it better not to render a final decree dismissing the bill. In this respect the decree heretofore rendered will be modified, reversing the decree of the chancellor and remanding the cause, with instructions that the motion to dismiss be sustained, and allowing complainants, if they desire, to amend the bill within such time as the chancellor may prescribe.

Reversed and remanded.