[Merchants & Planters Line v. Waganer.]

# Merchants & Planters Line *v.* Waganer.

*Bill in Equity by Stockholders against Corporation and Board of Directors to hold them accountable for Mismanagement of Corporate Trust, for a Dissolution of the Corporation, and Settlement of its Affairs.*

1. *Appeal from decretal order on demurrer to bill; what transcript should contain.*—On an appeal from an interlocutory decree on demurrer to a bill in equity, the transcript should only contain the bill and its exhibits, the process and service thereof, the demurrer, the decretal order thereon, the papers pertaining to the appeal, and the register's proper certificates.

2. *Corporation under general law; when regularity can not be questioned.*—On a bill filed by a minority of the stockholders in a private corporation organized under the general law, seeking to hold the corporation and a majority of the directors accountable for alleged mismanagement of the trust, no inquiry can be made as to irregularities in the organization, for the purpose of showing that, by reason of a failure to take some of the preliminary steps required by the statute, there was no proper incorporation.

3. *Bill by minority of stockholders against corporation and directors, seeking to hold them accountable for mismanagement; when without equity.* A bill filed by a minority of the stockholders in a private corporation against the corporation and a majority of the directors, seeking to hold them accountable for a mismanagement of the corporate trusts, charging the directors with a combination and formation of a ring for their own private profit at the expense of the other stockholders, and with acts of wrong-doing and mismanagement, none of which are *ultra vires*, but containing no averment that the corporate effects are imperiled by the insolvency of the parties, or that any request has been made known, soliciting the use of the corporate name in bringing suit against the offending directors, or that any attempt has been made to obtain a meeting of the stockholders for the purpose of obtaining redress for the alleged grievances,—is without equity.

4. *Private corporation; may be dissolved by act of stockholders.*—A private corporation, organized under the general law, for the purpose of conducting a purely private enterprise, entered upon solely for the benefit of the shareholders, no matter of duty, public in its nature, or.pertaining to the public welfare, being enjoined or assumed, which would not equally obtain, if the stockholders had, without incorporation, formed a joint stock company or partnership, having the same objects in view, may be dissolved by the stockholders without obtaining the consent of the State; and the duration of its corporate existence may be limited by a by-law adopted at the time of its organization.

5. *Same; dissolution at period fixed by by-law; continuance of business after dissolution; nature of, and rights and duties of parties.*—A by-law of such corporation, adopted at the time of its organization, providing that it shall be dissolved on a designated day in the future, puts an end to the corporation on the day designated; and its continuance thereafter

[Merchants & Planters Line v. Wagener.]

is merely permissive, the result of silent acquiescence, and it can only be regarded as a joint stock company, having no fixed duration, and being liable to be terminated at the mere will of any of the parties in interest; but so long as the shareholders continue to act in joint adventure after such dissolution, they must be presumed to have agreed to be governed by the same authority and rules as those which governed the corporation.

6.  *Bill by stockholders against corporation and directors ; when not multifarious.*—A bill filed by a minority of the stockholders of a private corporation, seeking a dissolution of the corporation, and a settlement of its affairs, is not multifarious, because the complainants are not entitled to joint or co-extensive relief. The complainants are entitled to relief of the same kind ; and, in taking the account, complete adjustment should be made among all the parties, plaintiff and defendant.

APPEAL from the Chancery Court of Mobile.

Heard before Hon. JOHN A. FOSTER.

The bill in this cause was filed on the 1st June, 1882, by Louis P. Waganer and G. Floyd Johnston, as stockholders or shareholders in a private corporation, called the "Merchants & Planters Line," against the said corporation, and against Rittenhouse Moore, James G. Stewart, and Frank S. Stone, "directors and active managers of said corporation," together with the other stockholders; and sought a dissolution of the corporation, a settlement of its affairs, and the appointment of a receiver to take charge of its property pending the suit; charging the principal defendants with various acts of misconduct in the management of its business, by which injury was caused to the corporation and the complainants. The bill did not allege that the said association was a corporation, but that it claimed to be a corporation, organized under the general laws of Alabama authorizing and regulating the formation of private corporations, stating the facts touching its organization, and submitted to the court the question, whether, on the facts stated, the association was a corporation; seeking to hold the defendants liable "as individuals doing business under the name of the Merchants and Planters Line, and against said Merchants and Planters Line as a corporation."

The declaration or articles of incorporation were filed in the office of the probate judge of Mobile on the 12th November, 1879, and stated that the corporation was formed "for the purpose of chartering, buying and owning steamboats and other water-crafts, for the object and purpose of establishing and regulating a line of steamboats and other water-crafts to ply and transport freight and passengers" on all the rivers and tributary streams emptying into the bay of Mobile. The stockholders were all owners and part-owners of steamboats, and their boats were turned over to the corporation at an agreed valuation, the shares of stock held by each being determined by the value of his boat. Waganer was one of the original stockholders, and John-

ston became a stockholder by purchase from Stewart after January, 1881. Rittenhouse Moore was elected president and treasurer of the corporation, and a board of directors was elected consisting of said Moore, F. S. Stone, G. J. Stewart, L. P. Waganer, and V. B. Gunnison; and Gunnison having sold and transferred his interest to Moore, J. Bethea was afterwards elected a director in his place. The bill alleged that Moore, Stone and Stewart, "being a majority of the board of president and directors, formed a ring or combination to use their said offices of trust for their own personal ends and profit, to the detriment of said association and others holding stock therein; and in pursuance of this design, they met and managed the affairs of said 'Line' by themselves, without directors' or stockholders' meetings, and without giving notice to said L. P. Waganer, who was a director, claiming that, as they constituted a majority of the board, they could and would deal with it as they saw proper, and need not give the minority any notice of their meetings. They fixed the salary of said Moore, as president and treasurer, at $200 per month, which is a grossly extravagant sum, and which was fixed at that rate, not with reference to the value of his services, but to benefit said Moore," who, it was alleged, was engaged in other kinds of business, and devoted but very little of his time and attention to the business of the corporation; and there were similar charges as to the salary paid G. J. Stewart, $150 per month, as secretary, and $50 per month to Frank Ward, " as collector of the bills of the boats," he being a clerk in Moore's employment.

Among other charges of mismanagement and abuse of trust on the part of said Moore, Stone and Stewart, the bill contained the following allegations: "After said company was duly organized, by a resolution adopted at a regular meeting of the said company, said Moore was required to give a bond, as president and treasurer, with good security, in the sum of $10,000, for the moneys and property coming to his hands, and for the faithful performance of his duties; and another resolution was adopted, requiring him to deposit the money of the company, in its name, in a designated bank in Mobile;" and it was alleged that he had never given any bond, and had never deposited the moneys of the company as instructed, but had intermingled them with his own funds, and had kept and dealt with them as his own. "They have failed to perform their duty in not requiring full, fair and proper returns of the earnings of said steamboats to be made, although they well knew that some of the boats make, and long have made, false returns of their cargoes and freight, greatly to the injury of said company; and they have failed to lay up such boats, but have paid the stockholders representing said boats their dividends, without requir-

ing them to settle up their arrearages, in violation of the by-laws of the company. They have abused their said offices and trusts by laying up some boats arbitrarily and unreasonably, and especially that of your orator Johnston, so as to prevent him from earning his salary as captain, and also in laying up the boat of your orator Waganer, and have kept other and less suitable boats running, simply to enable the owners of such boats, who are in said ring, to earn salaries as captains; and recently, while capriciously and unnecessarily keeping the boats of your orators laid up and idle, they purchased another boat, called the *Ruth*, and run her for said company, so as to enable them to give employment to J. Woodie Stone as captain, he being also in said ring, and to give employment to men whom said Moore had in his individual employment, and to whom he was liable for salaries. They purchased said steamboat *Ruth* for $3,200, and for a long time filed no bill of sale for her to said company, in the custom-house at Mobile; and when your orators began to investigate said matter, they recorded a conveyance of her, reciting a consideration of $5,000; and orators charge, on information and belief, that they are seeking to charge said boat to said company at that price, when they only paid $3,200 for her. The purchase of said boat was unnecessary, and not to the true interest of said company, and is an attempted speculation for their own private advantage." It was charged, also, that Moore had received large sums of money, by way of *bonus* on cotton brought to Mobile to be compressed, and as *rebate* on charges of freight, drayage, wharfage, etc., and failed to account to the company for these sums; and numerous other wrongful acts were specified.

A demurrer to the bill was filed by all the defendants, jointly and severally, and a separate demurrer by the several defendants who were sought to be charged individually. The causes of demurrer assigned were—1st, multifariousness; 2d, misjoinder of complainants; 3d, non-joinder of necessary parties; 4th, that the corporation was, according to the allegations of the bill, dissolved on the 1st January, 1881; 5th, that for the alleged wrongful acts there was a complete remedy at law in the name of the corporation, and the bill did not show a request and refusal to prosecute a suit in the name of the corporation. The chancellor overruled the demurrer, and his decree is now assigned as error.

MACARTNEY & CLARKE, for appellants.

R. INGE SMITH, and ANDERSON & BOND, *contra*.

STONE, J.—The first forty, and the last four pages of the Vol. LXXI.

[Merchants & Planters Line v. Wagener.]

record in this case, contain every thing that can be considered on the questions raised by the present appeal. There are other one hundred and eighteen closely written folio pages, made up of affidavits filed for and against the appointment of a receiver; a motion that was never acted on in the court below, and, of course, is not and can not be the subject of an assignment of error. The appeal is from an interlocutory decree of the chancellor, overruling a demurrer to the bill. Nothing should have come before us except the bill and its exhibits, the process and service thereof, the demurrer, the decretal order of the chancellor, and the papers pertaining to the appeal, with the register's proper certificates. The affidavits were no part of the record, and could not become such, until they were made the basis of judicial action, either in granting, or refusing to grant an order for a receiver. Counsel should have seen to it, that these affidavits were omitted from the transcript, for the double reason, that it would have curtailed more than half the expense of this appeal, and would have left the transcript much less cumbrous. It does not sufficiently appear who is at fault for the insertion of this unnecessary matter, and we therefore make no order in this case in reference to the cost of it. Should another record come before us, needlessly incumbered as this is, we will allow no costs for the superfluous matter.

In November, 1879, ten persons as corporators and shareholders made application to be incorporated under the general laws of the State of Alabama. They filed their declaration in writing, and therein set forth, that their corporate name was to be "The Merchants and Planters Line," and that their corporation was formed "for the purpose of chartering and buying and owning steamboats and other water crafts, for the object and purpose of establishing and regulating a line of steamboats and other water crafts to ply and transport freight and passengers, for proper compensation, on the Bigbee, Little Bigbee, Warrior, and Alabama and Mobile rivers, and all the rivers and streams tributary thereto, and the bay of Mobile." The capital stock was fixed at ten thousand dollars, divided into two hundred shares of fifty dollars each. The ten corporators, in subscribing the declaration, set opposite their names the amount of stock they severally proposed to take, and in this way the whole two hundred shares were taken. They, soon after filing their declaration, held a stockholders' meeting, adopted a system of by-laws, elected five directors, chose one of the number to be president and treasurer, and entered upon their corporate existence, dating from November, 1879.

It is stated that some of the statutory steps, preliminary to a proper incorporation, were not taken; and on that account, the inquiry is raised whether the company ever was in fact in-

corporated.   We use the word inquiry, because it can scarcely be affirmed that counsel contend such is the case.   There is nothing in the suggestion.   If this were a proceeding by *scire facias*, or in the nature of a *quo warranto*, then this question could be considered.   It can not be raised in a proceeding such as this, which is a bill filed by certain stockholders, seeking to hold the corporation and a majority of the board of directors accountable for alleged mismanagement of the trust.—Ang. & Ames on Corp. §§ 777–8; Boone's Man. of Corp. § 203; Morawetz, Priv. Corp. § 658; *Baker v. Backus*, 32 Ill. 79.

Have the complainants averred sufficient facts to authorize them, representing, as they do, a minority of the stock, to come into equity for the redress of the wrongs they complain of, while the corporate powers are still in exercise?   Very true, the present bill charges that three, a majority, of the directors have combined and formed a ring for their own private profit, at the expense of the other stockholders, and many acts of wrong-doing are charged against those three directors.   No act is charged that is *ultra vires*, and there is no averment that the corporation effects are imperiled by the insolvency of the parties.   Neither is there averment in the bill that any request has been made known, soliciting the use of the corporate name in bringing suit against the alleged offenders.   Nor is it shown that any attempt has been made to obtain a meeting of the stockholders.   In *Tuscaloosa Manufacturing Co. v. Cox*, 68 Ala. 71, the questions presented arose on bill filed by a minority of stockholders.   True, the abuses charged in that case were less flagrant than those complained of in this; but the difference is in degree, not in kind.   In that case, we ruled that complainants had shown no ground for equitable relief.   We said, "in the government of corporations, much must be left to the judgment and discretion of the directory, and much must be credited to the fallibility of human judgment.   If it be supposed an unwise course is being pursued, or that the interests of the corporation are suffering, or likely to suffer through the inefficiency or faithlessness of an official, an appeal should first be made to the directory or governing body, to redress the grievance.   Failing there, in ordinary cases the next redress will be found in the power of the ballot, which usually comes into exercise at short intervals."   We quoted approvingly the cases of *Greaves v. Gouge*, 69 N. Y. 154, and *Brewer v. Boston Theatre*, 104 Mass. 378.   In *Hawes v. Oakland*, 104 U. S. 450, Justice MILLER, in delivering the opinion of the court, stated that a stockholder could appeal to the courts for relief, "where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders."

[Merchants & Planters Line v. Waganer.]

That is precisely what is averred in this case. "But," Justice MILLER adds, "in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach, to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains; and he must show a case, if this is not done, where it could not be done, or it was not reasonable to require it." These principles commend themselves to our approval by the strongest of considerations. A corporation, to attain the highest success, should, like a family, dwell together in unity. And when disputes arise between members of this body politic, or law-created household, they should, if possible, be adjusted among themselves. It should be a strong case to justify a resort to personal litigation, which almost invariably leads to personal alienation, if not open hostility.—*Pratt v. Jewett*, 9 Gray, 34.

There is a remaining question. The by-laws, adopted at the stockholders' meeting which organized the corporation, are made part of the bill. By-law number 14 is in this language: "This corporation shall be dissolved on the first day of January, 1881." In Ang. & Ames on Corp. § 766, after enumerating several modes by which corporations may be dissolved, the authors say: "To these modes of dissolution may be added one grown to be quite common in this country; the dissolution of a corporation by expiration of the term of its duration, limited by charter or general law." And in section 772 the same authors say: "In this country, the power of a private corporation to dissolve itself by its own assent, seems to be assumed by nearly all the judges who touch upon the point." Many authorities are cited in support of this; but the authors add: "It would seem that, as there are two parties to the charter compact, the assent of both would be necessary to the abrogation of the contract." In *Treadwell v. Salisbury Manuf. Co.*, 7 Gray, 393, the Supreme Court of Massachusetts held that corporations of a private nature, established solely for manufacturing purposes, may by vote, even of a majority of their members, wind up their business and close their operations, if they elect to do so. It will be observed that this right is placed on

the ground that the corporation was purely of a private nature, in which the public could not be supposed to have any interest. Between such corporation and any joint adventure in which parties may associate themselves, there can be little or no difference, so far as the rights of the public are concerned. In Morawetz, Priv. Corp. § 629, speaking of the methods by which such corporations may be dissolved, the author names as one of them, "surrender of the franchises to the State." In section 215, the same author, speaking of clauses limiting the duration of charters, said : "If the provision is intended merely as a limitation upon the duration of the franchises granted to the corporators, there is no reason why the majority should not be held to have implied authority, as in other cases, to wind up the business of the company whenever they deem this to be expedient."

The business of the Merchants and Planters Line, so far as the same is disclosed in the declaration and in the by-laws, appears to be a purely private enterprise, entered upon solely for the benefit of the shareholders. No matter of public duty, or duty pertaining to the public welfare is any where discovered, which would not equally obtain, if the stockholders had, without incorporation, formed a joint stock company, or partnership, having the same objects in view. It would seem this corporation was organized solely for private emolument.

This argument is strongly fortified by the language and policy of our statutes, which make provision for annulling private corporations. It will be observed that such proceeding may be instituted "on the information of any person," and that the judgment of vacation may be pronounced on the single ground that the corporation has surrendered "its corporate rights, privileges and franchises."—Code of 1876, §§ 3419, 3434. We hold that the stockholders of this corporation had the power to dissolve it, without obtaining the consent of the State. This principle was so announced in *Savage v. Walshe*, 26 Ala. 619. See, also, *M. & O. R. R. Co. v. State*, 29 Ala. 573; *McLaren v. Pennington*, 1 Paige, 102; *Enfield Toll Bridge Co. v. Conn. Riv. Co.*, 7 Conn. 45; *Slee v. Bloom*, 19 Johns. 456; *Canal Co. v. R. R. Co.*, 4 Gill & Johns. 1; *McIntyre Poor School v. Zanesville Canal Co.*, 9 Ohio, 203; *Mumma v. Potomac Co.*, 8 Pet. 281.

In the very act of organizing this corporation, the stockholders, by a by-law, fixed the term of its duration. Their language was, it shall be dissolved on the first day of January, 1881. A more solemn agreement and compact could not be entered into. We can not know that in the absence of that compact the corporation ever would have been organized, or its duties entered upon. We hold that such stipulation, embodied

[Merchants & Planters Line v. Waganer.]

in the original compact, is at least as obligatory on the stock-holders, as a resolution afterwards adopted would be.    This put an end to the corporation, as a corporation, January 1st, 1881. Its continuance afterwards was merely permissive, the result of silent acquiescence, and can only be regarded as a joint stock company, having no fixed duration, and liable to be terminated at the mere will of any of the parties in interest.    Filing a bill for an account is one mode of putting an end to it.    We do not hold, however, that any change had been wrought in the sev-eral rights and liabilities of the shareholders, by the agreed dis-solution of the corporation.    So long as they continued to act in joint adventure, they must be presumed to have agreed to be governed by the same authority and rules, as those which governed the corporation.

There is nothing in the demurrer for multifariousness.    The complainants, according to the averments of the bill, are each entitled to relief of the same kind, and to have an accounting and settlement of the enterprise.    It is not important, in such a bill, that the complainants shall be entitled to joint, or co-extensive relief.    Settlement of the entire accounts is the pur-pose, and in taking the account, complete adjustment should be made among all the parties, plaintiff and defendant.    Each, no matter what his position may be as a party to the record, should have the relief a proper statement of the account enti-tles him to, and should be held to account for any and all sums he has improperly received.    Precisely this, and nothing less, the bill calls for.—1 Dan. Ch. Pr. (5th Amer. Ed.) 341, note 4; Sto. Eq. Pl. §§ 110, 159, 162, 166, 218.

All the present shareholders, if the averments of the bill be true, are made parties to the suit.    Of course, there can be no relief for or against any person not a party.    The demurrer for non-joinder was properly overruled.

Considered as a bill to settle the accounts of a dissolved cor-poration, and of its successor, a *quasi* joint stock company, the chancellor did not err in overruling the demurrer.

Affirmed.