# Mack *v.* DeBardeleben Coal & Iron Co.

*Bill in Equity by Stockholder in Private Corporation, for Injunction against Illegal Voting by Majority.*

1. *Injunction against corporation, at suit of stockholder; previous request to directors for action.*—A stockholder in a private corporation, or a minority of the stockholders. can not maintain a bill in equity to prevent illegal action on the part of the majority, without a previous request to the proper officers to intefere, and their failure or refusal to do so; unless facts are stated which show that such request would be unavailing and useless.

2. *Same.*—If the bill shows that a majority of the directors are also stockholders and directors of a rival corporation, which has bought up a majority of the stock of the defendant corporation, and are using their voting power in the interest of said rival corporation, to the detriment of the other, this dispenses with the necessity of a previous request for action by the directors; but, if it shows that, of the seven directors, only three have been elected by the voting power of the rival corporation, an averment that one of the four old directors in fact has no interest in either corporation, but holds his stock and votes in the interest and at the direction of the president of the

rival corporation, does not dispense with the necessity for such previous request.

3. *Statutory (or charter) restriction on voting power of stockholders.*—A statutory (or charter) provision, declaring that no stockholder in a private corporation, "either in his own right, or as proxy or agent of others, shall be entitled to cast more than one-fourth of all the votes at any election of directors," is intended for the benefit and protection of minority stockholders, "and deserves to be upheld with a strong hand;" and it can not be defeated, or evaded, by a nominal transfer of stock to other persons, to be held and voted in the interest of the transferror.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon. THOMAS COBBS.

The bill in this case was filed on the 24th January, 1890, by Thomas A. Mack, a stockholder in the Eureka Company, a private corporation, against the said corporation, H. F. DeBardeleben, its president, David Roberts, secretary and a director, A. T. Smythe, another director, and the DeBardeleben Coal & Iron Company, another private corporation; and prayed relief as follows: "That a writ of injunction issue, restraining and enjoining the DeBardeleben Coal & Iron Company, its officers and directors, agents and servants, from voting upon any and all stock standing in its name on the books of the Eureka Company, and especially from voting upon said 4,673 shares of stock bought by said DeBardeleben (C. & I.) Company from Fallis and others, as set out in this bill, or any part of said stock, at any election for directors of said Eureka Company, or at any meeting of said company, or in any manner participating therein; and restraining and enjoining said Eureka Company, its officers and agents, inspectors of elections, from permitting them to vote on said stock standing on the books of the company in the name of said DeBardeleben (C. & I.) Company, or any one else; and further restraining and enjoining the said DeBardeleben (C. & I.) Company, its officers and agents, from selling or disposing of any part of said shares standing in its name, or held in trust for it by any one, except as may be done by the order and direction of this hon. court; and that said H. F. DeBardeleben may be enjoined and restrained from acting as the president of said Eureka Company, or undertaking to make contracts, or to act for it in any capacity, as managing agent or officer of said company; and that said Roberts may be enjoined and restrained from acting as secretary, or as director of said Eureka Company, or as any officer of said company; and that said A. T. Smythe may be enjoined and restrained from acting as an officer of said company; and that said DeBardeleben, Roberts and Smythe, being a majority of the board, may be restrained and enjoined from levying any debt or mortgage upon any part of the property

[Mack v. DeBardeleben Coal & Iron Co.]

of the said Eureka Company." The bill prayed, also, the appointment of a receiver to take charge of the property of the Eureka Company, and for general relief.

The material allegations of the bill, on which the prayer for relief was founded, are stated in the opinion of the court. On the filing of the bill, a temporary injunction was granted; and after answer filed, the defendants submitted a motion to dismiss the bill for want of equity, and to dissolve the injunction, (1) for the want of equity, and (2) on the denials of the answer. The chancellor overruled the motion to dismiss the bill, but dissolved the injunction on the denials of the answer. The complainant appeals from this decree, and here assigns it as error.

R. H. PEARSON, HEWITT, WALKER & PORTER, and TOMPKINS & TROY, for appellant, cited the following authorities on the main points in the case: *M. & C. Railroad Co. v. Woods*, 88 Ala. 630; *Nathan v. Tompkins*, 82 Ala. 438; *Moses v. Tompkins*, 84 Ala. 613; *Webb v. Ridgeway*, 38 Md. 364; 120 Ill. 447; 52 Ind. 296; 20 Hun, N. Y. 355; 1 Mor. Corp. §§ 242, 252; High Inj. § 1232; Cook on Stockholders, § 741; 19 A. & E. Corp. Cases, 353; 6 Gill & J. 94; *Dodge v. Woolsey*, 18 How. 331; 3 Pom. Eq. 1092; 32 N. J. Eq. 236.

WEBB & TILLMAN, and WEATHERLY & PERCY, *contra*, cited *Tuskaloosa Man. Co. v. Cox*, 68 Ala. 71; *M. & P. Line v. Wagner*, 71 Ala. 581; *Nathan v. Tompkins*, 82 Ala. 437; 3 Pom. Eq. § 1094; *Hawes v. Oakland*, 104 U. S. 455; 69 N. Y. 154; 104 Mass. 387; 146 Mass. 485; *C. & A. R. R. v. Elkins*, 37 N. J. Eq. 276; *Pender v. Lushington*, 6 Ch. Div., L. R. 70; *Moffatt v. Farquhar*, L. R., 7 Ch. Div. 591; Angell & A. Corp. 346, § 312; 20 N. J. Eq. 122; 50 Barbour, 167; 144 Mass. 545; 40 Geo. 582; 23 Howard, 381; 21 Md. 50; 65 Me. 43.

STONE, C. J.—The Eureka Company is a mining and manufacturing corporation, having its *situs* and business residence at Oxmoor in Jefferson county. Its history may be briefly stated as follows: There was first an association and incorporation under the general statutory provisions, but it had a different name. By special enactment, approved November 5, 1862—Sess. Acts, 118—it was incorporated as the "Red Mountain Iron and Coal Company." Its declared purposes were, "mining for coal and iron, and the making and general manufacture of iron on their lands in Shelby and Jefferson counties." This act of incorporation was somewhat amended by

act approved March 3, 1871.—Sess. Acts, 257. By statute, its name was changed to the "Eureka Mining Company of Alabama."—Sess. Acts 1866–6, 558. By act approved December 6, 1873—Sess. Acts, 139—some additional provisions were enacted in reference to said corporation.

What we have stated above we have gleaned from private enactments, which, with the exception of a clause in the act of 1873, to be considered further on, are not before us in such form as that we can consider them. They are introductory to the opinion which follows, and will make it more easily understood. This is the sole purpose of their insertion here. No ruling will be based on their provisions, save the one clause in the act of 1873.

The DeBardeleben Coal and Iron Company is another corporation in Jefferson county, engaged in substantially the same lines of business and trade, and has its business *situs* nine miles from that of the Eureka Company. In the further progress of this opinion we will characterize them as the Eureka Company and the DeBardeleben Company.

The present bill was filed by Mack, a stockholder and director of the Eureka Company. It sets forth that the stock of the Eureka Company consists of 8,308 shares, of which complainant, Mack, owns 3,185 shares; that in October, 1889, the DeBardeleben Company purchased and became the owner of 4,673 shares of the Eureka Company's stock, being a majority of the whole number of shares; that soon thereafter a meeting of the Eureka Company was held in Cincinnati, Ohio, at which three of its directors, including its president, resigned, and H. F. DeBardeleben, D. Roberts and A. T. Smythe were elected in their stead, DeBardeleben being made president, and Roberts secretary. DeBardeleben was president of the DeBardeleben Company, and Roberts and Smythe were directors in that corporation.

A clause in the bill contains, we suppose, a clerical error, which renders it difficult to be understood. It should probably be read as follows: "That they [the controlling board of the DeBardeleben Company] in this way had a sufficient number of themselves to *assume* the office of directors of said Eureka Company to make a majority of the board, and in this way unlawfully and illegally *assumed* to act as directors, and at once took absolute charge and control of all the property of the Eureka Company." The import of this averment is, that in the election at Cincinnati, the DeBardeleben Company, through its majority voting power, acquired a majority of the governing body, by electing, through its majority of the stock in the Eureka Company, three of its own board, DeBardele-

ben, Roberts and Smythe, and that these three constituted a majority of the board of directors of the Eureka Company. Based, as we suppose, on the assumed truth of this averment, the present bill was filed, and seeks to enjoin the DeBardeleben Company, an alleged rival corporation, from voting its majority stock in an election of directors for the Eureka Company, soon to come off.

The bill makes no averment that complainant, before instituting his suit, made any attempt, or preferred any request, to have the wrongs he complains of redressed by a suit instituted by and in the name of the corporation, and it is not pretended he made such request. If it were true that DeBardeleben, Roberts and Smythe, president and directors of the DeBardeleben Company, constituted a majority of the directors of the Eureka Company, this would excuse Mack for not requesting proceedings for redress through the corporate authorities of the latter corporation. Elected as they were by the DeBardeleben Company, holding the majority of the stock as it did, the presumption that a request of suit would be denied is so strong as to relieve Mack of the necessity of making it. The law never requires a vain ceremony.—*Tuskaloosa Man. Co. v. Cox*, 68 Ala. 71; *Mer. & Plan. Line v. Wagner*, 71 Ala. 581; *Nathan v. Tompkins*, 82 Ala. 437; *Rothwell v. Robinson*, 21 Amer. & Eng. Corp. Cas. 408; *M. & C. R. R. Co. v. Woods*, 88 Ala. 647; *Hawes v. Oakland*, 104 U. S. 450.

In consequence of certain details contained in the answers, it became necessary to file an amended bill, which was done February 3, 1890. By that amendment it is shown that the board of directors of the Eureka Company consists of seven members, only three of whom, DeBardeleben, Roberts and Smythe, were elected after the DeBardeleben Company became the owner of a majority of the Eureka's stock. Four of the directors, Mack, M. H. Smith, L. E. Miller and J. W. Means, were directors in the Eureka Company before and at the time of the purchase, and are still directors. It is not charged that either of these four is a stockholder or director in the DeBardeleben Company. The charge in reference to M. H. Smith is as follows: "That the said 4,683 shares of stock now standing upon the books of the Eureka Company to M. H. Smith, who is one of the directors of the said Eureka Company, but who has no interest in said company or its stock, but who holds the same in the interest of said DeBardeleben Coal and Iron Company, and who acts in all matters connected with said Eureka Company, in the interest of, and as requested by the defendant, H. F. DeBardeleben."

If said M. H. Smith had not been a director before the De-

[Mack v. DeBardeleben Coal & Iron Co.]

Bardeleben Company's purchase of the stock in the Eureka Company, but, like DeBardeleben, Roberts and Smythe, had been elected after the purchase, possibly the presumption would be, that he would exercise his power in the interest of the company to which he owed his election; and, possibly, in such case, no request for suit by the corporation would be necessary as a pre-requisite to a suit by a stockholder. We need not decide these questions, as this case does not raise them. According to the averments of the bill, Smith had no interest in either corporation, and he was not indebted to the DeBardeleben Company for his election. We can not presume that he will contribute to, or sanction, bad faith in the government of the corporation. It is only when interest antagonizes duty that equity will stretch forth its restraining hand.—*M. & C. R. R. Co. v. Woods*, 88 Ala. 630; Cook on Stock & Stockholders, § 618; *Moses v. Scott*, 84 Ala. 608. We think the bill, as amended, is fatally defective, in not averring a previous request or appeal to the majority of the directors to institute proceedings in the name of the corporation, to restrain the apprehended abuse of power by the DeBardeleben Company, through its ownership of a majority of the stock of the Eureka Company. We announce this principle as the logical result of our ruling in the case of *M. & C. R. Co. v. Woods*, not because of alleged wrongs perpetrated. We place it on broader grounds than that. It is our intention to adhere literally to the doctrine there announced.

The answers of the defendants, while they do not dispute the alleged intention of the DeBardeleben Company to vote its entire stock in the election of directors for the Eureka Company, deny every charge of partiality and mal-administration in the government of its affairs. The chancellor dissolved the injunction on the denials of the answers, and from that order the present appeal is prosecuted. He erred only in the reasons he gave for his ruling. The bill, as we have shown above, was prematurely filed, in not first seeking redress through the corporate authorities. For that reason, the injunction was rightly dissolved, and the decretal order of the chancellor must be affirmed.

Many other questions material to the future government of the Eureka Company have been well and ably argued, and we feel it our duty to notice some of the more important of them. In the act to amend the charter of said company, approved December 6, 1873—Sess. Acts, 139—is this language: "No stock [holder], either in his own right, or as proxy or agent for others, shall be entitled to cast more than one-fourth of all the votes at any election of directors." This clause is set forth

26

in the amended bill, and is in that way brought before us. We hold this language means one-fourth of all the votes the shares of stock authorize to be cast. One-fourth of the votes in the Eureka Company, with its present number of shares, is 2,077.

It is averred, and not denied, that the DeBardeleben Company, as a corporation, is the owner of more than 4,600 of the Eureka shares. The amended bill charges that "the defendant, H. F. Debardeleben, as president of the DeBardeleben Coal and Iron Company, and acting as president of Eureka Company, and David Roberts, as secretary of both of said companies, and with the knowledge and consent and connivance of the defendant A. T. Smythe, a short time prior to the 19th of January, 1890, had a large lot of the stock of the Eureka Company, . . . . . which was owned and held by the DeBardeleben Coal and Iron Company, . . . . . transferred into their individual names, that is to say: they had transferred to each of the following persons, who were at that time directors of the DeBardeleben Company, or large stockholders in said company, the following number of shares: H. F. DeBardeleben, 500 shares; David Roberts, 500 shares; A. T. Smythe, 360 shares; M. B. Lopaz, 423 shares; Robert Adger, 300 shares; A. M. Adger, 300 shares; F. J. Pelzer, 300 shares; leaving in the name of the DeBardeleben Coal and Iron Company 1,990 of the 4,623 shares: . . . . that the said stock so transferred . . . was, and is now, the stock and property of the DeBardeleben Coal and Iron Company; . . . that the transfers to said persons were so made . . . for the purpose of avoiding and getting around the section of the charter and by-laws of said Eureka above set out. Said transfers of said stock were so made in fraud of the minority stockholders of said Eureka Company, and to enable all of said stock to be voted in the interest, and for the benefit of the DeBardeleben Coal and Iron Company." The substantial averments of fact in the foregoing extract are not denied in the answers.

It is contended for appellees that the said transferrees of the DeBardeleben Company's stock in the Eureka Company are of right entitled to vote the several shares standing in their names, notwithstanding the statutory inhibition copied above. They rely on the following authorities as supporting their contention: *In re Stranton I. & S. Co.*, 16 Eq. Ca. L. R. 559; *Pender v. Lushington*, 6 Ch. Div. L. R. 70; *Moffatt v. Farquhar*, 7 Ch. Div. L. R. 591; *Camden & Atl. R. R. Co. v. Elkins*, 37 N. J. Eq. 273. The English authorities quoted do lend some countenance to their argument, but we can not

[Mack v. DeBardeleben Coal & Iron Co.]

follow them. The New Jersey case is not fully in point. We think the statutory restraint on the voting power of the stockholders was enacted for very wise and conservative purposes, and that it should be upheld in its integrity. It is perhaps to be lamented that our organic law does not contain a provision applicable to all business corporations aggregate, that no one person, whether natural or artificial, can ever exercise a controlling voice in their organization or government.

Giving due consideration to the sworn denials and averments of the answers in this case, we find no ground for imputing vicious purposes in the government of the Eureka Company; but the power one corporation acquires by the ownership of a majority of the stock of another corporation, with which it has business connections, opens an inviting door for very pernicious possibilities, which the virtues of the manipulators and speculators have not always enabled them to withstand. The provision we are considering was conceived in the interest, and for the protection of minority stockholders, and deserves to be upheld with a strong hand. The highest function of the law is the protection of the weak against the mighty.

On principle, it would seem that the restrictive clause in the amended charter of the Eureka Company is too pronounced and emphatic to be disobeyed, or evaded. What can not be done directly, can not be accomplished by indirection. No one, except in matters of official trust, can confer on another authority to do what he can not do himself. What one does by another, he does by himself. But we are not without authorities in support of our views. *Campbell v. Poultney*, 6 Gill & Johnson, 94, presented the identical question we have in hand. The question arose on a bill filed to prevent gratuitous transferrees of stock, made that the stock might be voted in the interest of the transferror, who still remained the owner, from voting such stock as an independent stockholder. The court ruled that the transferror could not increase his voting power by any such device, and chancery would enjoin the casting of a greater number of votes than the transferror himself could have cast. In *Webb v. Ridgely*, 38 Md. 364, the same doctrine was asserted.—2 High on Injunctions, § 1231. In *State, ex rel. Danforth v. Hunton*, 28 Ver. 594, a proceeding by *quo warranto* to test the question of the election of certain persons as directors of a bank, similar principles were declared. It was ruled that, when the transferror could not vote the stock, his gratuitous transfer to another, that the latter might vote it in his interest, and according to his wishes, conferred on that other no greater power than he himself could exercise. The court, among other things, said, " The law is not to be outwitted by cunning devices. "

[Mack v. DeBardeleben Coal & Iron Co.]

Our conclusions are, that neither the DeBardeleben Company nor any other stockholder of the Eureka Company, can, either directly or indirectly, vote more than one-fourth of all the votes at any election of directors; that in a proper case chancery will enjoin that company from casting more than one-fourth of the votes; that if, by reason of votes cast in excess of this restriction, any person or persons are declared elected directors, on a proceeding in *quo warranto* the illegal votes will be disallowed; and if such disallowance reduces the number of votes cast for such director or directors below a majority of the votes lawfully cast, then a judgment shall be awarded against them, removing them from said office or trust.

We have not commented on the election held at Cincinnati, Ohio, in October, 1889. That election was irregular, if not void.—Act approved February 27, 1889—Sess. Acts, 76.

The decretal order of the chancellor is affirmed.

STONE, C. J.—After this court announced its opinion affirming the decretal order of the chancellor, which had dissolved the injunction granted at the instance of Mack, motion was made in behalf of complainant that the certificate of affirmance be withheld, and the judgment suspended, until complainant can amend his bill, so as to give equity according to the ruling of this court. Accompanying the motion counsel made a statement, which, if averred and proved, would probably heal the imperfection, on account of which this court held the bill to be with equity.

There have been cases before us, appealed from decretal orders overruling motions to dissolve, in which, differing from the chancellor, we have reversed his ruling and remanded the cause, without entering any decree in this court dissolving the injunction. In making such rulings, we have been influenced by the consideration that it did not appear the bill could not be amended, and the injunction thereby rightfully preserved. In cases of this class, our rule has been to direct the court below to dissolve the injunction, unless an amendment of the bill should be made, curing the imperfection.

The motion in this case asks us to go entirely beyond the rule stated, and to reinstate the injunction, not on averments now in the bill, but on others which it is proposed to make. We say this is the motion, because, without reinstating the injunction, the relief sought can not be obtained. The motion must be denied. Complainant, after amending his bill, will have to renew his application for injunction, before a proper judicial officer, as he may be advised.

Motion denied.