[Decatur Mineral Land Co, et al. v. Palm et al.]

# Decatur Mineral Land Co. et al. v. Palm et al.

*Bill in Equity by Minority Stockholders against Corporation and Directors for Protection against Mismanagement of Corporate Affairs.*

1. *Bill by minority stockholders against corporation; when complainants entitled to solicitor's fee.*—Where, on a bill filed by minority stockholders of a corporation to prevent mismanagement of the corporate affairs by its officers, and for an injunction to prevent the payment of unreasonable and exorbitant claims held by the president and secretary against the corporation for their salaries, and to restrain the directors from voting excessive salaries to the officers, a decree was granted cancelling the outstanding claims held by the president and secretary, and awarding an injunction to restrain the board of directors from voting unreasonable compensation to the officers, the complainants are entitled to a reasonable solicitor's fee to be paid by the corporation.

2. *Same; same; how amount of fee fixed.*—Where, in such a case the complainants are awarded solicitor's fee, the court can not take judicial notice of the value of the services rendered by the solicitors, but the amount of the fee must be determined from the evidence.

3. *Right of stockholder to file bill to redress corporate wrongs; what must be shown.*—Before a stockholder can maintain a suit in his own name against a corporation of which he is a member, to redress alleged corporate wrongs, he must show to the satisfaction of the court that he has done all in his power to obtain, within the corporation itself, the redress of the wrongs complained of; that he has made an honest effort to get the governing body of the corporation to remedy the wrong, and, failing with them, he then applied to the stockholders as a body to take action towards redressing the grievances complained of.

4. *Same; bill must allege the facts showing excuse for not requesting governing body to sue, and not mere conclusions.*—Where a bill is filed by a stockholder of a corporation, to have redressed alleged corporate wrongs, without having made a request of the managing body of the defendant corporation to have corrected the grievances complained of, the complainant must aver in his bill the facts constituting his excuse for not making such request with particularity and definiteness; the averment of conclusions will not suffice, but the facts upon which these conclusions are based must be averred.

5. *Same; when presumption that directors would refuse to file bill does*

[Decatur Mineral Land Co. *et al.* v. Palm *et al.*]

*not arise.*—The mere fact that three stockholders of a corporation controlled the election of the seven directors of the company, and elected them by their votes, does not authorize the legal presumption that the directors thus elected would refuse to discharge their duties as such directors of the corporation to the stockholders when so requested by any of the stockholders of said company; and in order for a stockholder to maintain a bill in his own name against a corporation in which such a condition of affairs exists, to redress alleged corporate wrongs, he must aver and show, in addition to such facts, a request by him, and a refusal by the directors, to take action towards redressing the grievances complained of.

6. *Same; fact of appeal by stockholders being unavailable does not excuse request of the directors.*—The mere fact that an appeal to the stockholders of a corporation to maintain a bill to redress corporate wrongs would be unavailable, does not of itself excuse the minority stockholders who sought to file such a bill from appealing to the board of directors before filing the bill.

Appeal from the Chancery Court of Morgan.

Heard before the Hon. William H. Simpson.

The facts of the case are sufficiently stated in the opinion.

Harris & Eyster, for appellants.—1. There were no such allegations in the original bill as would excuse a demand upon the corporate body to prevent the allowance by directors of the salaries mentioned.—*Tuscaloosa Manfg. Co. v. Cox*, 68 Ala. 71; *M. & P. Line v. Waganer*, 71 Ala. 586; *Mack v. DeBardeleben C. & I. Co.*, 90 Ala. 396.

2. It was error on the part of the city court to refer to the clerk and register to ascertain and report counsel fees for the counsel of complainants, the minority stockholders, and in overruling the appellant's exception to the register's report, and in decreeing to solicitors for appellants, complainants below, five hundred dollars as counsel fees. "It has recently been held that the attorneys for the minority stockholders of an insolvent corporation, who had filed the bill for injunction for a receiver and to sell upon the ground of fraud and confederacy on the part of defendant—the majority of the stockholders—were not entitled to have their fees allowed out of the proceeds of the sale made by the receiver, appointed according to the prayer of the bill."—*Hubbard v. Camperdown Mills*, 7 S. E. Rep. 5; Beach on Receivers, § 752.

[Decatur Mineral Land Co. *et al.* v. Palm *et al.*]

3. The contract with the president and secretary was legal, no fraud charged or proved in the procurement of it, and both Scruggs and Nelson were entitled to a performance of it. Besides a meeting of the stockholders, in annual convention assembled, ratified the contract by a large majority. This they had a right to do, and it would be binding on the corporation even if the contract had been illegal.—Morawetz on Corporations, §§ 33-7, 474; *Davis Bros. v. Montgomery F. & C. Co.*, 101 Ala. 127.

The salaries of the officers were fixed in advance of the services rendered by them. They were entitled to receive the amount fixed by the directors. The allegations of the bill that a "conspiracy" was entered into for the payment of the salaries is not sustained by the evidence, and the chancellor so held. The proof fails to establish any conspiracy participated in by a majority of the board of directors for the purpose of managing and controlling the affairs of the defendant company in the interest of said Scruggs and Nelson to the great detriment and fraud of the rights of the minority stockholders. In the absence of such showing, the court will not substitute its judgment for that of the corporation's regularly constituted governing board, which alone has the power to fix the salaries of the officers and direct the general policy of the company.—Cook on Stockholders, § 657; *Tuscaloosa Manfg. Co. v. Cox*, 68 Ala. 71; *M. & P. Line v. Waganer*, 71 Ala. 586.

CLIFTON & ECKFORD and HUMES, SHEFFEY & SPEAKE, *contra.*—On the facts of this case, the complainants were not required to make a request of the corporation to bring the suit, for it would have been entirely useless to have done so. It would have been met with a prompt and defiant refusal. And if instituted at all, the litigation which followed would have been controlled in the interest of these defendants opposed to its success. Where the directors or officers of the corporation who control its actions are guilty of the wrong complained of, themselves, then the rule invoked by appellants in assignments of errors Nos. 1, 2 and 3, can not be made to apply.—1 Beach on Private Corporations, § 256 B., notes; 2 Beach on Corporations, § 886 and notes; *Steiner v. Parsons*, 103 Ala. 215.

2.   In suits of this character the complaining stock-
holders control the suit, but if successful, the results of
the suit belong to the corporation.   While the corpora-
tion is under the control and management of the guilty
directors and officers, and by reason of such control
must be made defendants, yet the proceeds and benefit
of the suit can not be taken by the minority stockholders.
It goes to the corporation, and although it comes
to the corporation indirectly and over the objections and
protests of its managing agents, yet the suit is none the
less for the benefit of the corporation.   In all such suits,
the stockholders who are successful are entitled to their
costs, including attorney's fees, to be paid by the corpo-
ration.   Their attitude is just the same, touching these
costs, as though the suit had been brought by the cor-
poration.   The test being always whether the suit, and
its results, achieved a benefit for the corporation.   This
is not a suit between warring stockholders, but was for
the protection of the corporation and has resulted in re-
lieving the corporation from a large debt and protecting
its property from being actually consumed in further
unnecessary and exorbitant salaries.—2 Cook on Stocks
& Stockholders, § 748 ; 3 Pomeroy's Equity, § 1095 ; 2
Spelling on Private Corporations, § 643 ; *Grant v. Look-
out Mountain Co.*, 93 Tenn. 691 ; *Trustees v. Greenough*,
105 U. S. 527 ; *M. & C. R. R. Co. v. Grayson*, 88 Ala. 572.
The proper remedy in all such cases is by injunction and an
accounting, which was done in this case.   While it is
true that courts of equity will not unnecessarily inter-
fere with the internal policy of private corporations ;
yet when it is evident that the directors or a majority of
them are acting for their own interest in a manner de-
structive of the interest of the corporation, or of the
minority of the stockholders, equity will enjoin such
conduct as readily as though the acts were *ultra vires*.

Such was the conduct of these defendants, who, to-
gether with those whom they controlled on the board,
constituted a majority of the directors.   Not only the
income of the corporation, but its *corpus* when con-
verted into money was swallowed up by these useless
salaries.   We submit that the policy of these directors
and officers was so highhanded and lawless that it actu-
ally amounted to a diversion of the corporate property
from the objects and purposes for which the corporation

[Decatur Mineral Land Co. *et al.* v. Palm *et al.*]

was created; and that the continuance of such a policy for the three years prior to the filing of the bill, taken in connection with the condition of the corporation, made the acts *ultra vires*.—1 Beach on Private Corporations, §§ 437, 429, and 430; 2 Beach on Private Corporations, §§ 883, and 910; *Miner v. Belle Isle Ice Co.*, 53 N. W. Rep. 219; 2 Spelling on Private Corporations, § 615; 2 Cook on Stocks & Stockholders, § 745; *Tuscaloosa Mfg. Co. v. Cox*, 68 Ala. 71.

COLEMAN, J.—Otto Palm and others, minority stockholders in the appellant corporation, filed their bill, in which it is averred that appellants, Thomas M. Scruggs and S. M. Nelson, controlled a majority of the stock of the corporation, and used their power in the selection of the board of directors, and dominated the management of the corporation for their personal advantage. The principal wrongs complained of consist in the election of incompetent and unfaithful persons as president and secretary, to-wit, Thos. M. Scruggs and S. M. Nelson, and the appropriation by the directors of exhorbitant and unreasonable amounts to their salaries, and neglect of duty on their part. The bill prays for the removal of these and other members of the board of directors, for an injunction to restrain the board from voting unreasonable salaries hereafter, for an account to ascertain how much they have received over and above what is just and reasonable, a decree for such excess, and a cancellation of the notes held by such officers against the corporation for unpaid salaries, in excess of what they should be allowed. The bill also prayed for a receiver.

It will be seen from this statement of the purposes of the bill, that the corporation is the proper complainant, and that stockholders are not allowed to apply to a court of equity for relief in such a case, except upon averment and proof that the corporation has refused, upon application, to remedy the wrong, or upon sufficient averments to show that application to the board of directors or stockholders would have been in vain, or the circumstances were such as to excuse the complaining stockholders from first seeking a remedy in this way, if there can be any other in any case.

At the final hearing, the court granted relief to com-

plainants, in so far as the bill prayed for a cancellation of the outstanding and unpaid claims of the president and secretary for salaries, and awarded an injunction to restrain the board of directors from voting unreasonable compensation to said officers, and allowed complainants a solicitor's fee to be paid by the corporation. The respondents appeal from this decree. If the complainants were entitled to the relief granted, the benefit resulted to the corporation, and through it to all the stockholders, as such, alike. The complainants could receive no advantage which would not operate equally for the advantange of all the stockholders. If the corporation had filed the bill, there can be no doubt, that its solicitors would have been entitled to reasonable compensation to be paid by the corporation. Its refusal necessitated the filing of the bill by the stockholders. Under these facts we have no doubt that the corporation is chargeable with whatever compensation the complainants' solicitors are entitled to. The amount of the fee, however, should have been determined from the evidence. We do not think the court could take judicial knowledge of the value of services rendered by the solicitors.—*Clark v. Knox*, 70 Ala. 607. The evidence shows, that S. M. Nelson and Kate Gutherz were sisters, and Thomas M. Scruggs their nephew, that these three stockholders owned but little less than a majority of the entire outstanding stock, that at some of the meetings of the stockholders, their stock exceeded a majority of the stock present and voting, and that at other meetings their stock and that held by them as proxies constituted a majority. The stock owned by these three shareholders and that controlled by them was voted in concert, either S. M. Nelson or Thomas M. Scruggs generally voting that owned by Kate Gutherz.

It is reasonably clear that they dominated the stockholders' meetings, and elected the board of directors, of which the said Scruggs and Nelson were always included as members. The by-laws authorized the directors to fix the salaries of the officers and elect them. Thomas M. Scruggs and S. M. Nelson were members of the board of directors which fixed the salaries of the president and secretary, and which elected them to these offices, and it is satisfactorily shown that both were instrumental in fixing the amount to be paid, and in electing themselves to their respective offices. The pleadings

[Decatur Mineral Land Co. *et al.* v. Palm *et al.*]

and evidence show that the board of directors consisted of seven members. In the 7th paragraph of the bill it is averred, that four members, to-wit, H. B. Scott, S. M. Nelson, Thomas M. Scruggs and J. C. Eyster, met and re-elected Scruggs president at a named salary, J. C. Eyster vice-president, and S. M. Nelson secretary. Of necessity, Scruggs and Nelson voted for themselves. This averment is nowhere controverted. We are of opinion that the evidence leaves no room for reasonable controversy that the salaries voted to the president and secretary, when considered with reference to the duties required of and performed by them, and the financial condition of the corporation, were out of all proportion, and unreasonable. These salaries not only consumed all the income, but encroached annually upon the capital assets, and if continued, would eventually leave nothing for the stockholders. The duty of a director is to act for the interest of the stockholders, and manage the affairs of the corporation for their benefit, and not for his personal gain. There was a direct conflict between the duty owed by these directors to the stockholders, and their self interest; and, as is frequently the case under such conditions, the frailty of human nature sacrifices duty to self interest. They fixed the salaries at exorbitant prices, then elected themselves to the offices. The fact that the president may have been unwilling to accept the office at a less salary, proves nothing in favor of the fairness and reasonableness of the amount. A minority stockholder who cannot obtain redress against such a wrong, through the board of directors or the stockholders, is entitled to the intervention of a court of equity.—1 Morawetz on Corp., §§ 508, 518 *et seq.*; Cook on Stocks & Stockholders, § 657, and notes.

This brings us to the consideration of a question which vitally affects complainants' standing in a court of equity. The respondents demurred to the bill upon the ground that the bill admitted that complainants had not applied to the board of directors or to the stockholders for redress, and failed to state sufficient reasons for not doing so. The demurrer was overruled, and the same question and issue was raised by answer. After careful consideration, we are of opinion that the court erred in its rulings upon the demurrer, and in its con-

clusion from the facts bearing upon this issue. In the case of *Tuscaloosa Manufacturing Co. v. Cox*, 68 Ala. 71, we used this language : "If it be supposed an unwise course is being pursued, or that the interests of the corporation are suffering, or likely to suffer through the inefficiency or faithlessness of an official, an appeal should first be made to the directory or governing body, to redress the grievance. Failing there, in ordinary cases the next redress will be found in the power of the ballot, which usually comes into exercise at short intervals. We will not say there may not be cases, in which the strong, restraining arm of the chancery court may be invoked in the first instance. . The whole governing force may become corrupt, or may enter into a combination, either *ultra vires*, or so destructive of the policy and property of the corporation, as to show an appeal to the directory would be fruitless, and delay extremely perilous. It should be a strong case, however, to justify such interferences."

In the case of *Merchants & Planters Line v. Waganer*, 71 Ala. 581, we quoted approvingly from the case of *Hawes v. Oakland*, 104 U. S. 450, the following principles of law as applicable : "A stockholder could appeal to the courts for relief, 'where the board of directors, or a majority of them, are acting for their own interest, in a manner destructive of the corporation itself, or of the rights of the other shareholders.' This is precisely what is averred in this case. 'But,' Justice MILLER adds, 'in addition to the existence of grievances which call for this kind of relief, it is equally important that before the shareholder is permitted in his own name to institute and conduct a litigation which usually belongs to the corporation, he should show to the satisfaction of the court that he has exhausted all the means within his reach to obtain, within the corporation itself, the redress of his grievances, or action in conformity to his wishes. He must make an earnest, not a simulated effort, with the managing body of the corporation, to induce remedial action on their part, and this must be made apparent to the court. If time permits, or has permitted, he must show, if he fails with the directors, that he has made an honest effort to obtain action by the stockholders as a body, in the matter of which he complains ; and he must show a case, if this is not done,

where it could not be done, or it was not reasonable to require it.' "

In the case of *Steiner v. Parsons*, 103 Ala. 215, after citing the foregoing authorities it was held, that mere averments of conclusions, without averment of the facts which sustained the conclusions, were insufficient. The reasons for the principle are so strongly and clearly stated in the cases cited, that we consider it unnecessary to fortify them by additional argument or authority. It is a settled question in this court. The abstract abounds with averments, that the directors were dominated by the president and secretary, and that an application to the board would have been useless; but with one exception to be noticed presently, there is not a single fact averred to show why the board of directors would not have interposed at the request of the complainants. The fact referred to is the statement that Thomas M. Scruggs, S. M. Nelson and Kate Gutherz had the voting power to control the meeting of the stockholders and did dominate at these meetings. We observe here that this is the only material fact established by the evidence bearing upon this issue. The question then is, does the fact that these three stockholders controlled the election of the seven directors and did elect them by their votes, without more, authorize the legal presumption that the directors thus elected would refuse to discharge their duties as directors to the corporation and the stockholders, when requested by the stockholders? The case of *Mack v. De-Bardeleben*, 90 Ala. 401, can not be regarded as an authority. In the first place, the question was not before the court. In the second place, the decision of the question was expressly pretermitted, and *arguendo*, it was stated that *possibly* "the presumption would be, that he (a director) would exercise his power in the interest of the company to which he owed his election." There is no ground for such a presumption in the present case. The directors were stockholders. In the absence of causes to influence them otherwise, the presumption is that they would do their duty, and this presumption is greatly strengthened when the effect of duty was to promote their personal interest.—*Porter v. Pittsburg Bessemer Steel Co.*, 120 U. S. 670. With the exception of the stockholders who as officers received salaries, the interest of the other members of the board of directors, as well as

their official duty, required a prompt interference to redress the wrong. The pleadings and evidence show that two of the directors are complainants. J. C. Eyster, M. R. Leadingham and we presume H. B. Scott, together with Thomas M. Scruggs and S. M. Nelson, comprise the seven who constituted the board of directors. We find no averment in the bill, that H. B. Scott, M. R. Leadingham and J. C. Eyster, or any two of them, voted for the salaries, or for Scruggs as president and Nelson as secretary, nor do we find any sufficient averments in the bill, to show that they, or at least two of them, would not have co-operated with the two members who are complainants in the present bill. We are satisfied that an application to the stockholders would have been a "vain and useless undertaking." It is clear that the president and secretary dominated the stockholders. If any further evidence than that already stated was needed on this point, it is to be found in the ratification by the stockholders at a meeting held since the beginning of this suit, at which the salaries fixed and the election and conduct of the president and secretary were approved. At this meeting, the president and secretary, voting their own stock and that of their relative Kate Gutherz, had no difficulty in obtaining a ratification of their own previous actions. This fact, however, did not relieve the minority stockholders from applying to the directors, unless there were other circumstances which relieved them from this duty. The bill and evidence is insufficient on this point. Ordinarily, we would render a decree here, annulling the decree of the court below, and dismissing complainants' bill, but we find difficulties owing to the condition of the case as presented in the abstract, when submitted for final decree. In the beginning of the abstract it is stated that the bill is filed against the corporation and six named directors. Included in these named directors is Kate Gutherz. The bill shows that Falk and Palm are also directors. This would make eight directors, yet the pleadings elsewhere and the evidence show that seven directors constituted the entire board. In the answers it is admitted that Kate Gutherz is a director as averred. Process is prayed against her as a respondent. The minutes of the stockholders' meeting held February 8, 1892, at which the directors were elected, who were in office at the time of

[Ellis v. Pratt City.]

the filing of the bill, does not show that she was elected a director, but names other seven. She was made a respondent to the bill. The abstract fails to show that as to her the case was at issue. She has not answered, and there has been no decree *pro confesso* against her. Again, the bill makes S. M. Nelson a material defendant, and the decree affects her personally. She has no answer on file. There is a mere reference in one place that she filed a plea of coverture, but this plea does not seem to have been considered by the parties or the court in any way. The abstract abounds in errors as to dates, some of which only we have been able to correct from other parts of the abstract. In this condition of the record, we have felt it our duty to reverse and remand the cause, and have stated the law applicable to the case, for the future guidance of the court.

Reversed and remanded.